UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-24611-DPG

MICHAEL SMITH,

Plaintiff,

v.

CARNIVAL CORPORATION,
NIKHIL MAHARAJ, M.D., and
LETLHOGILE RANTLERU, M.D.

Defendants.
_______________________________/

**DEFENDANT'S MOTION IN *LIMINE* TO EXCLUDE OPINIONS AND TESTIMONY OF NASSER RAZACK, M.D. AT TRIAL PURSUANT TO *DAUBERT V. MERRILL DOW PHARM, INC.* AND PRECLUDE ANY NON-DISCLOSED EXPERT OPINIONS**

Defendant, CARNIVAL CORPORATION (hereinafter "Defendant" or "Carnival"), by and through its undersigned counsel, hereby files this Motion in *Limine* to Exclude Opinions and Testimony of Nasser Razack, M.D. at Trial Pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993), and preclude any non-disclosed expert opinions, and in support thereof would state as follows:

## I. INTRODUCTION AND BRIEF SUMMARY OF ARGUMENT

1. On August 17, 2026, Plaintiff served his Expert Witness Disclosure disclosing Nasser Razack, M.D. ("Dr. Razack") as an expert, among others. *See* Plaintiff's Expert Witness Disclosure, attached hereto as **Exhibit A**; *see also* Dr. Razack's Expert Report attached hereto as **Exhibit B**.

2. Plaintiff's Expert Witness Disclosure provides that Dr. Razack will provide opinions regarding the interpretation of Mr. Smith's neuroimaging, the timing and establishment

of infarct, shipboard neurological examination of Mr. Smith, deviations from stroke protocols, and causation. *See* **Ex. A**.

3. Dr. Razack's deposition was taken on September 28, 2026. *See* Deposition Transcript of Nasser Razack, attached hereto as **Exhibit C** (cited within as "Tr."). Notably, during the deposition, Dr. Razack was questioned about opinions in his disclosed report however testified that the disclosed report was not "relevant anymore" and his opinions had since changed but were not disclosed, nor had Dr. Razack prepared any updated reports. Tr. 10:24-11:5. As Dr. Razack now offers new opinions that were never properly disclosed before the expert disclosure deadline, nor supplemented with any written report, any opinions Dr. Razack offered for the first time at his deposition should be stricken pursuant to Rule 26.

4. Dr. Razack should otherwise be properly excluded as an expert witness in this matter, pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 403 and 702, as he is unqualified to provide an expert opinion as to the standard of care of a shipboard physician. Dr. Razack's opinions on causation should further be stricken as they are based upon pure speculation and assumptions. Finally, Dr. Razack's opinions are based upon facts that are contradictory to record evidence, including Plaintiff's own testimony, thus unhelpful to a trier of fact.

5. Thus, Dr. Razack should not be allowed to provide testimony or opinions as an expert witness at trial in this matter.

## II. LEGAL STANDARD

The district court serves as a gatekeeper to the admission of scientific testimony by ensuring that "speculative, unreliable expert testimony does not reach the jury under the mantle of reliability that accompanies the appellation 'expert testimony.' " *Daubert v. Merrell Dow Pharms., Inc.*, 509

U.S. 579 (1993); *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). In determining the admissibility of expert evidence, the court engages in a rigorous three-part inquiry pursuant to *Daubert* and its progeny. Relevant expert testimony is admissible only if the trial court finds that: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. *Rosenfeld v. Oceania Cruises Inc.*, 654 F. 3d 1190, 1193 (S.D. Fla. 2011) (*quoting United States v. Frazier*, 387 F.3d at 1260); *see also Daubert*, 509 U.S. at 589. The Eleventh Circuit has referred to these requirements as the "qualification," "reliability," and "helpfulness" prongs, and although there may inevitably be overlap, the three prongs remain distinct concepts that must be individually analyzed. *Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

Moreover, "[t]he burden of laying the proper foundation for the admission of the expert testimony is on the party offering the expert, and admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). "Thus, the proponent must demonstrate that the witness is qualified to testify competently, that his opinions are based on sound methodology, and that his testimony will be helpful to the trier of fact." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1372 (S.D. Fla. 2005) (interpreting *Allison*, 184 F.3d at 1306). "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263; *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-CV-23874, 2019 WL 5260249, at *4 (S.D. Fla. July 10, 2019). Ultimately, a trial court has "considerable leeway" in exercising its discretion to admit or exclude expert testimony. *Thelen v.*

*Somatics, LLC*, 156 F.4th 1115, 1132 (11th Cir. 2025) (*citing Frazier*, 387 F.3d at 1258); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)).

## III. ARGUMENT AND ANALYSIS

Pursuant to his report and testimony,[1] Dr. Razack intends to offer the following expert opinions in this case:

(1) Dr. Maharaj deviated from the standards of care of a shipboard physician;

(2) Dr. Maharaj failed to properly identify and diagnose Mr. Smith's stroke in the ship's Medical Center;

(3) Carnival and/or Dr. Maharaj failed to initiate early evacuation and shoreside imaging and such delay caused irreversible harm to Plaintiff;

*See generally,* **Exhibits A-C**.

Dr. Razack should be precluded as an expert witness as he is not qualified to opine upon the standard or care of a shipboard physician. Dr. Razack's methodology is not reliable nor helpful to a trier of fact as his opinions are derived from speculation and hypothetical unproven scenarios of facts. Finally, Dr. Razack's causation opinions should be precluded as factually unsupported, and contradictory of Dr. Razack's own testimony. Defendant addresses each prong of the *Daubert* analysis below.

## ***DAUBERT* ANALYSIS**

### Qualifications

"The qualifications requirement is 'not stringent' and '[s]o long as the witness is minimally qualified, objections to 'the level of [his] expertise [go] to credibility and weight, not admissibility.' " *Jackson v. Aden*, No. 3:24CV429-TKW-ZCB, 2025 WL 3140630, at *4 (N.D. Fla. Oct. 24, 2025). "[A]ssuming the expert is qualified to testify, the subject matter of the

[1] Dr. Razack essentially abandoned the arguments in his report testifying that his report was no longer relevant anymore as he changed his opinions since then. No amended or supplemental report was prepared or disclosed to Defendant. Tr. 10:24-11:5.

testimony must be within the scope of his expertise." *Id.* (*citing Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001)).

Dr. Razack provides the opinion that ship physician Dr. Maharaj deviated from the standard of care by failing to perform neurological examination, failing to properly recognize or document symptoms of a stroke, and failing to escalate Mr. Smith for evacuation. Dr. Razack is a specialist in his field consisting of neurology, neuro-imaging and neurointervention. Tr. 36:21-37:6. Dr. Razack is not an emergency medicine physician nor critical care physician. In his practice, Dr. Razack does not perform the initial evaluation or treatment of patients. Tr. 37:12-37:21. As Dr. Razack admitted, a separate physician would need to first evaluate a patient, make the determination that they should seek a specialist, and then send to Dr. Razack for treatment. Tr. 37:12-37:21. Dr. Razack also agreed that the standard of care would be determined by whether the doctor acted reasonably based upon information that was available to him in his field of practice. Tr. 41:13-41:17. Ship physician Dr. Maharaj is not a neurological specialist, he is a ship physician qualified to treat and evaluate patients in a ship's Medical Center. Stated another way, if at a land-based hospital Dr. Maharaj would be the type of physician who initially evaluates the patient and if needed refers them to specialists such as Dr. Razack. Thus, Dr. Razack is not qualified to testify as to whether Dr. Maharaj acted reasonably in his initial evaluation[2] of Mr. Smith in the ship's Medical Center.

Further, it is undisputed that Dr. Razack has never worked as a cruise doctor. Tr. 38:2-38:4. Dr. Razack has never been on a cruise ship. Tr. 38:5-38:9. Dr. Razack has never performed any type of evaluation or assessment of a patient at sea, nor been involved in deciding whether a passenger should be medically evacuated at sea. Tr. 38:14-38:21. He has never published

[2] Notably, Dr. Razack was critical of Dr. Maharaj's diagnosis of seasickness yet admitted he was not qualified to make such criticisms. Tr. 56:16-57:5.

addressing the standard of care for doctors practicing medicine at sea. Tr. 41:20-41:23. He has never taken a course on cruise ship medicine. Tr. 41:24-42:1. He has never written any clinical guidelines governing cruise ship medical care nor developed any cruise line medical protocols. Tr. 42:2-42:7. He has never trained nor conferred with a cruise ship doctor. Tr. 42:8-43:1. No part of his neuroradiology training concerned the standard of care applicable to a cruise ship doctor. Tr. 43:15-43:18. Thus, Dr. Razack is not qualified to testify as to the standard of care of a cruise ship doctor such as Dr. Maharaj. Dr. Razack further is not qualified to testify as to the escalation of or medical evacuation of Mr. Smith from the vessel. Plaintiff otherwise has disclosed Dr. Victor Gomez as his emergency medicine and critical care expert, thus Dr. Razack's opinions would be improperly cumulative. Therefore, Dr. Razack should be precluded from offering any opinion or testimony regarding Dr. Maharaj's initial evaluation of Plaintiff, the standard of care of a cruise ship physician, the escalation of care, or evacuation from the vessel.

**<u>Reliability / Methodology</u>**

"[S]omething doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were 'derived by the scientific method' be deemed conclusive." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). Reliability of the methodology requires "an exacting analysis of the proffered expert's methodology." *Leger v. Carnival Corp.*, No. 1:24-CV-21364, 2025 WL 1295042, at *2 (S.D. Fla. Feb. 25, 2025) (*citing McCorvey*, 298 F.3d at 1257). To satisfy this requirement, the expert testimony must "be supported by appropriate validation—i.e., 'good grounds,' based on what is known." *Jackson*, 2025 WL 3140630, at *5 (citing *Frazier*, 387 F.3d at 1261).

"That analysis takes into consideration a number of factors, including: (1) whether the expert's methodology can be, and has been, tested; (2) whether the expert's scientific technique

has been subjected to peer review and publication; (3) whether the method employed has a known rate of error; and (4) whether the technique is generally accepted in the scientific community." *Leger*, 2025 WL 1295042, at *2 (*citing Rink*, 400 F. 3d at 1291–92). "And, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.' " *Jackson*, 2025 WL 3140630, at *5 (emphasis original); *see also McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005) (explaining that an "expert's assurances that he has utilized generally accepted scientific methodology are insufficient" and that a court must do more than simply take "the expert's word for it"); *Brashevitzky v. Reworld Holding Corp.*, 348 F.R.D. 107, 118 (S.D. Fla. 2024) ("An expert cannot rely on 'experience' without explaining in detail how the experience and other materials consulted support the opinion rendered.").

1. Last Known Well Time Opinion

The "last known well time" is a particularly critical to Dr. Razack's ultimate expert opinions, as it begins the timeline of events in which he is critical of. Dr. Razack testified that Mr. Smith's last known well time was 7:15 p.m. on October 18, 2024. Tr. 48:14-48:21. This opinion was notably not included anywhere in Dr. Razack's report. This opinion is solely based upon the first note being written in the shipboard medical record at 7:16 p.m. Tr. 58:12-58:21.

**Triage**

DOCUMENTED DATE
Oct 18, 2024 19:16 UTC-04:00

DOCUMENTED USER
Dube, Debra RN

VISIT REASON
Illness

LAST UPDATED DATE
Oct 19, 2024 10:13 UTC-04:00

LAST UPDATED USER
Dube, Debra RN

PRIORITY
URGENT

CHIEF COMPLAINTS
**Patient attends clinic for General body weakness and vomiting**

NOTES
I received a call from guest services regarding a guest
who was reported to be vomiting in his cabin and unable to walk.
I found the guest sited on a chair.
Fully conscious, alert and communicating well.
He complained of general body weakness, vomiting and soft stools since two days ago.
He stated that he vomited more than 10 times, and he hasn't eaten anything since then.
He denied shortness of breath and chest pain.
Denied abdominal pain.
He was brought down to the medical center on a wheelchair.
Vital signs were checked and recorded.
He denied any allergies to medication.
Known with Diabetes on treatment.
The patient has a septic left big toe nail.
Referred to the physician for evaluation.

Notwithstanding, Dr. Razack wholly ignores the portion of the same note describing how Mr. Smith complained of symptoms for two days prior. Critically, the opinion that Mr. Smith's "last known well time" was at 7:15 p.m. is contradictory to Mr. Smith's own testimony stating he was sick since the early morning of October 18th:

> Q. All right. So you do not recall, when you woke up on the morning of October 18, how you were feeling?
> A. I was feeling like – the 18th, I think I woke up throwing up, pissing, shitting. And I told my nephew to call my sister. "Call them. Something is wrong."
> Q. Okay. Your nephew was in Freeport from 8:54 a.m. until 9:39 a.m. What were you doing during the time he was in Freeport?
> A. Sick.
> Q. In your cabin?
> A. In my cabin.
> Q. And when you say "sick," what were your symptoms?
> A. Throwing up, shitting, pissing, and couldn't walk.

**Pl's Deposition,** Tr. 105:6-105:22. Plaintiff's own sworn evidence contradicts Dr. Razack's opinion that Plaintiff was well until 7:15 p.m. on October 18. Dr. Razack testified that he didn't

know if he read any deposition transcripts[3] but was "not relying on their deposition to answer this question." Tr. 58:22-60:6. Dr. Razack cannot simply choose to ignore record evidence, including sworn testimony of the Plaintiff, without considering and ruling out such evidence. *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993) (affirming exclusion of expert's testimony that was based on assumptions that were not supported by the record) (citing *Garwood v. Int'l Paper Co.*, 666 F.2d 217, 223 (5th Cir. Unit B 1982) (not manifest error to exclude expert testimony where expert's testimony based on assumptions unsupported by the record)).

2. Causation Opinion

An opinion is not reliable when there is "too great an analytical leap between the [supporting] data and the opinion proffered." *Brashevitzky*, 348 F.R.D. at 114-5 (citations omitted). "An expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions" *Id*. at 115 (*quoting McDowell*, 392 F. 3d at 1300).

Dr. Razack opines that Carnival and/or Dr. Maharaj improperly delayed and that earlier and prompt evacuation of Plaintiff immediately at 7:15 p.m. upon presenting to the Medical Center would have prevented "irreversible harm." **Ex. B**, pg. 3. Dr. Razack otherwise agreed that the only available treatment for Mr. Smith would have been IV thrombolytic treatment, which requires medication to be administered within 4.5 hours maximum, from the last known well time. Tr. 42:23-43:1, Tr. 49:11-49:25. Even assuming the aforementioned problematic last known well time of 7:15 p.m., this would necessarily require that Mr. Smith be administered IV thrombolytic treatment by 11:45 p.m. Tr. 51:24-52:6. Dr. Razack opined that this would require Mr. Smith to

[3] On September 28, 2026 Dr. Razack testified that any depositions he reviewed "was over a year ago" but this cannot be accurate as the first deposition taken in this case was on March 19, 2026. It was otherwise impossible for Dr. Razack to have reviewed any depositions "over a year ago" as this case was initiated in October 2025.

be at the hospital by 10:45 p.m. to receive the proper work up[4]. Tr. 55:1-55:20. Dr. Razack opines that had Dr. Maharaj properly assessed and diagnosed Mr. Smith's stroke during his initial evaluation at 7:45 p.m., Mr. Smith would have been able to obtain the IV thrombolytic treatment at Cape Canaveral hospital, to prevent his injuries. **Ex. B**, pg. 3. Dr. Razack's causation opinion fails as relying upon unsupported data and in fact is deemed impossible based upon Plaintiff's own set of facts proffered in this case. Specifically, Plaintiff's logistics expert, Captain Watson testified that the minimum time to divert the *Pride* to Cape Canaveral was 3 hours and 51 minutes. Thus, even had Dr. Maharaj diagnosed Mr. Smith with a stroke during the initial evaluation at 7:45 p.m., and Carnival immediately diverted the ship to Cape Canaveral, Mr. Smith would have reached the hospital at 11:36 p.m. As Dr. Razack opined that Mr. Smith would have needed to be at the hospital at 10:45 p.m., it was impossible for Mr. Smith to obtain the IV thrombolytic treatment in the requisite time frame to prevent injury. Thus, Dr. Razack's causation opinion fails as he offers no methodology or possible scenario where Mr. Smith could have obtained any better outcome, but for Carnival and/or Dr. Maharaj's alleged negligence, aside from apparent time travel. The impossible analytical leap from factual data to Dr. Razack's causation conclusion renders his opinions inadmissible.

**<u>Helpfulness</u>**

"An expert's testimony must be helpful to meet the third *Daubert* requirement. To be helpful, expert testimony must fit the facts of the case." *Brashevitzky*, 348 F.R.D. at 115 ("A party's failure to establish the first or second prong obviates the need to proceed to the next prong; the proffered expert testimony is not admissible without satisfying all three prongs."). "Just as an

---

[4] Dr. Razack had no personal knowledge nor could cite to any support for his opinion that the proper work up would have been under one hour like at his own home hospital, thus the opinion is no more than *ipse dixit*. *Disler v. Royal Caribbean Cruise Ltd.*, No. 17-CV-23874, 2019 WL 5260249, at *10 (S.D. Fla. July 10, 2019).

opinion is unreliable if it is based upon an analytical leap that is too great between the underlying information and the proffered opinion, there is not a 'fit' for purposes of the helpfulness prong when 'a large analytical leap must be made between the facts and the opinion.' " *Id*. ("[C]ourts consider 'analytical leaps' under both the reliability and helpfulness prongs of *Daubert*") (*quoting McDowell*, 292 F. 3d at 1298-99. Expert testimony that "offers nothing more than what lawyers for the parties can argue in closing arguments" generally will not assist the trier of fact and will be excluded." *Id.* (*citing United States v. Frazier*, 387 F.3d at 1262-63).

Dr. Razack opines:

> More likely than not, had Dr. Maharaj performed and documented a proper cerebellar examination on October 18, he would have identified deficits consistent with right SCA infarct. This would have prompted earlier evacuation and shoreside imaging, potentially allowing consideration of thrombolytic therapy before progression. This delay contributed to confirmed infarction with subsequent edema, ICU monitoring, and irreversible harm.

**Ex. B**, pg. 3. Dr. Razack's ultimate "causation and outcome" involves numerous hypotheticals and improper inference stacking. Even the conclusion he reaches at best offers that Mr. Smith would "potentially" have allowed for "consideration" of therapy to possibly help his progression. **Ex. B**, pg. 3. *Frazier*, 387 F.3d at 1266 ("because Tressel's opinion was imprecise and unspecific, the members of the jury could not readily determine whether the [conclusion] was a virtual certainty, a strong probability, a possibility more likely than not, or perhaps even just a possibility"); *Clarke v. Schofield*, 632 F. Supp. 2d 1350, 1370 (M.D. Ga. 2009) ("this 'could, could, could' testimony and 'possibility' opinions add nothing to assist the jury.") (citing *Daubert,* 509 U.S. at 592, 113 S.Ct. 2786 ("Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.")); *McClain*, 401 F.3d at 1241 (finding testimony unhelpful when expert clarified all answers with "potential, may, or could.").

**PRECLUSION OF IMPROPERLY DISCLOSED NEW OPINIONS OF DR. RAZACK**

"Compliance with Rule 26 is 'not merely' an aspiration' " but a requirement intended to permit both sides to prepare their cases and prevent surprise. *Martin-Viana v. Royal Caribbean Cruises Ltd.*, 733 F. Supp. 3d 1308, 1325 (S.D. Fla. 2024), *reconsideration denied*, No. 23-CV-21171, 2024 WL 3160676 (S.D. Fla. June 24, 2024); *Acosta v. Electrolux N.A.*, No. 08-60213-CIV, 2008 WL 5246160, at *5 (S.D. Fla. Dec. 16, 2008). A Rule 26 compliant written opinion must be contained in an expert report and "must be so complete that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover, the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.' " *Martin-Viana*, 733 F. Supp. 3d at 1325 (precluding expert from testifying at trial as to the late opinions that he conceded were not disclosed in his report but "sort of implied").

During Dr. Razack's deposition on September 28, 2026, he was questioned about opinions in his disclosed report however testified that the disclosed report was not "relevant anymore" and his opinions had since changed but were not disclosed, nor had Dr. Razack prepared any updated reports. Tr. 10:24-11:5. Dr. Razack did not review anything after preparing his report, thus offering no support or justification for the sudden change of opinions after the expert disclosure deadline. Tr. 14:20-14:23. Dr. Razack's As Dr. Razack now offers new opinions that were never properly disclosed before the expert disclosure deadline, nor supplemented with any written report, any opinions Dr. Razack offered for the first time at his deposition should be stricken pursuant to Rule 26. *Martin-Viana*, 733 F. Supp. 3d at 1325.

**CONCLUSION**

Dr. Razack should otherwise be properly excluded as an expert witness in this matter, pursuant to *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579 (1993) and Federal Rules of Evidence 403 and 702, as he is unqualified to provide an expert opinion as to the standard of care of an emergency medicine shipboard physician. Dr. Razack's opinions on causation should further be stricken as they are based upon pure speculation and assumptions. Finally, Dr. Razack's opinions are based upon facts that are contradictory to record evidence, including Plaintiff's own testimony, thus unhelpful to a trier of fact. Otherwise, the new opinions raised during Dr. Razack's deposition that were not disclosed should be precluded from use at trial for improper and untimely disclosure pursuant to Rule 26.

WHEREFORE, Defendant, CARNIVAL CORPORATION, respectfully requests that this Court enter an Order precluding Nasser Razack, M.D. from rendering any expert opinions in this case, and for any further relief this Courts deems just and proper.

**CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1(A)(3)**

In accordance with Local Rule 7.1(A)(3), undersigned counsel hereby certifies that they have conferred with Plaintiff's counsel via email correspondence on October 15 2026, regarding the subject Motion, and Plaintiff opposes the relief sought in this Motion.

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Ashley Genoese*
Michael J. Drahos
Florida Bar No. 0617059
michael.drahos@gray-robinson.com

Ashley N. Genoese
Florida Bar No. 1019357
ashley.genoese@gray-robinson.com

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 16, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Ashley Genoese*

**SERVICE LIST**
**CASE NO. 1:25-cv-24611-DPG**

Michael A. Hoffman, Esq.
David W. Singer, Esq.
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, Florida 33020
Tel: (954) 920-1571
mahoffman@1800askfree.com
adecasanova@1800askfree.com

*Attorneys for Plaintiff*