# EXHIBIT "B"

**Plaintiff's Expert Witness Disclosure**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-24611-GAYLES/SHAW-WILDER

MICHAEL SMITH,

Plaintiff,

v.

CARNIVAL CORPORATION,
NIKHIL MAHARAJ, M.D., and
LETLHOGILE RANTLERU, M.D.,
Defendants.
_____________________________________/

**PLAINTIFF'S EXPERT WITNESS DISCLOSURES PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(a)(2)**

Plaintiff, MICHAEL SMITH, by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 26(a)(2) and the Court's operative scheduling order, hereby discloses the following witnesses whom Plaintiff may use at trial to present evidence under Federal Rules of Evidence 702, 703, or 705.

## I. Retained expert witnesses — Fed. R. Civ. P. 26(a)(2)(B)

Each witness identified in this Section has been retained by Plaintiff to provide expert testimony in this case. A written report prepared and signed by each witness, containing the information required by Rule 26(a)(2)(B)(i)–(vi), together with the materials identified therein, is served contemporaneously with this disclosure.

### A. Victor Gomez, M.D., MSc, M.A., M.B.A.

Dr. Gomez, of VGA Global Access LLC, Miami, Florida, is a physician with postgraduate training in emergency medicine and critical care and more than a decade of experience as a shipboard physician and senior medical officer aboard large passenger

cruise vessels. Dr. Gomez is expected to testify regarding the standard of care applicable to the medical staff aboard the Carnival Pride during the October 13–20, 2024 voyage; the adequacy of the shipboard medical team's assessment, diagnostic evaluation, monitoring, reassessment, and documentation of Mr. Smith's presentation on October 18–20, 2024; the failure to recognize and objectively reassess neurologic red flags, including recurrent vomiting, inability to ambulate, dizziness, and lethargy; the adequacy of the informed-refusal process and the discharge planning associated with the Against Medical Advice documentation of October 18, 2024; the failure to timely escalate for shoreside referral and medical disembarkation, including under Carnival's MED-3102 and MED-3104 procedures and role-responsibility documents; and causation, including the resulting delay in definitive hospital-based stroke diagnosis, neuroimaging, specialist neurologic assessment, and hospital-level management. Dr. Gomez's opinions, the bases and reasons for them, and the facts and data he considered are set forth in his written report dated August 14, 2026, served herewith as Exhibit A, together with his curriculum vitae (Exhibit B) and litigation history (Exhibit C).

**B. Nasser Razack, M.D., J.D.**

Dr. Razack is a diagnostic neuroradiologist and neurointerventional surgeon, board-certified in diagnostic radiology with focused practice in CNS endovascular surgery, of Neurointerventional Associates, P.A., 335 31st Street South, St. Petersburg, Florida 33712.

Dr. Razack is expected to testify regarding the interpretation of Mr. Smith's neuroimaging, including the non-contrast head computed tomography performed at MedStar Harbor Hospital on October 20, 2024, demonstrating hypodensity within the right

superior cerebellum consistent with an acute infarct in the right superior cerebellar artery territory; the timing and establishment of the infarct; the clinical incompatibility of the shipboard neurological examinations documented by Dr. Nikhil Maharaj with an established right superior cerebellar artery territory infarct; the deviations from applicable standards, including the standards referenced in Carnival's stated shipboard medical policy and ACEP-recommended practices for suspected acute ischemic stroke and for acute dizziness and vertigo; and causation. Dr. Razack's opinions and their bases are set forth in his written opinion dated June 15, 2026, served herewith as Exhibit D, together with his curriculum vitae (Exhibit E) and fee schedule (Exhibit F).

**C. Captain Eric Watson, USCG Licensed Master**

Captain Watson, of Watson Maritime Consulting, LLC, 1028 Laurel Avenue, Venice, Florida 34285, is a United States Coast Guard licensed master. Captain Watson is expected to testify regarding the reconstruction of the position, course, and speed of the Carnival Pride on October 18, 2024; the vessel's distance and bearing to Port Canaveral at the time of Mr. Smith's shipboard medical evaluation; weather and environmental conditions; and the operational feasibility of obtaining shoreside emergency medical care, including diversion to Port Canaveral, at-sea surface transfer, and United States Coast Guard helicopter evacuation, together with estimated elapsed times to shoreside medical care and bridge and shoreside notification pathways. Captain Watson's opinions, the facts and data he considered, his qualifications, his statement of compensation, and his prior-testimony disclosure are set forth in his written report, WMC-103, dated August 13, 2026, and Appendices A through D thereto, served herewith as Composite Exhibit G, together with the fee schedule of Watson Maritime Consulting, LLC (Exhibit H).

**D. Jerry R. Adato, M.S., C.R.C., C.C.M., C.V.E.-Ret.**

Mr. Adato, of Adato Vocational Services, Inc., 890 N.W. 11th Terrace, Stuart, Florida 34994, is a life care planner, certified rehabilitation counselor, and certified case manager. Mr. Adato's opinions and the bases for them are set forth in his Life Care Plan dated August 14, 2026 and the itemized cost spreadsheet attached to it, served herewith as Exhibits I and J, together with his curriculum vitae (Exhibit K). Mr. Adato is expected to testify that, as a result of the acute right cerebellar cerebrovascular accident of October 18, 2024 and the resulting permanent, severe right-sided cerebellar ataxia, Mr. Smith requires lifelong care over his remaining life expectancy of 23.5 years, including: primary-care, neurology, physiatry, and cardiology monitoring, including annual Holter testing; ongoing physical therapy, occupational therapy, and psychological counseling; periodic neuropsychological evaluation, brain magnetic resonance imaging, and brain magnetic resonance angiography; prescription medication; durable medical equipment, including a custom manual wheelchair and rolling walker; a wheelchair-accessible conversion van; and personal attendant care of six hours per day. Mr. Adato is expected to testify that he priced each item of care at usual, customary, and reasonable self-pay rates for the Pittsburgh, Pennsylvania region using CPT-coded benchmarks, and that the required care totals $2,416,137.93 in unadjusted lifetime costs over Mr. Smith's remaining life expectancy.

**E. Bernard F. Pettingill, Jr., Ph.D.**

Dr. Pettingill is a consulting economist, 93 Sandbourne Lane, PGA National, Palm Beach Gardens, Florida 33418. Dr. Pettingill has been retained to determine the present value of the future medical and life-care costs identified in Mr. Adato's Life Care Plan, and his opinions, calculations, and the facts and data he considered are set forth in his Present

Value Analysis, served herewith as Exhibit L, together with his curriculum vitae (Exhibit M). Dr. Pettingill is expected to testify that he applied medical growth rates derived from United States Department of Labor, Bureau of Labor Statistics data to each category of future care identified in the Life Care Plan and a 5.10% discount rate to reduce those future costs to present value, and to testify to the present value of the funds needed to provide for Mr. Smith's future medical and life-care costs, as set forth in his Present Value Analysis. Dr. Pettingill's analysis is limited to the present value of future medical and life-care costs.

## II. Non-retained expert witnesses (treating physicians and providers) — Fed. R. Civ. P. 26(a)(2)(C)

The following treating physicians and treating providers were not retained or specially employed to provide expert testimony. Their opinions were formed during, and arise out of, their care and treatment of Plaintiff. Pursuant to Rule 26(a)(2)(C), Plaintiff discloses the subject matter on which each witness is expected to present evidence under Federal Rules of Evidence 702, 703, or 705, and a summary of the facts and opinions to which each witness is expected to testify. No written report is required for these witnesses. Each treating physician and provider is also expected to testify as a fact witness regarding the care and treatment rendered.

### A. Samuel Bennett Miller, M.D. — treating neurologist, MedStar Harbor Hospital, Baltimore, Maryland

Dr. Miller is the consulting neurologist who evaluated Plaintiff at MedStar Harbor Hospital, 3001 South Hanover Street, Baltimore, Maryland 21225, on October 20, 2024. Dr. Miller is expected to testify regarding the following subject matter: (1) the history he elicited, including that Plaintiff's right arm was "not working right," that Plaintiff was falling to the right, and that family had noticed slurred speech; (2) his neurological examination, which documented that finger-to-nose testing was markedly abnormal on the right and heel-to-shin testing was poor on the right; (3) his diagnosis of a right cerebellar

infarction with associated edema and mass effect, and its correlation with contemporaneous neuroimaging; (4) the acute management, monitoring, and disposition of Plaintiff's stroke, including transfer for a higher level of neurologic care; (5) the causal relationship between the delay in hospital-level evaluation and Plaintiff's presentation, condition, and prognosis, as informed by his care and treatment; and (6) the reasonableness and necessity of the charges for the treatment he rendered.

Summary of facts and opinions: Dr. Miller is expected to testify that on October 20, 2024, Plaintiff presented with, and on examination demonstrated, ipsilateral right-sided cerebellar deficits classic for a right superior cerebellar artery territory infarction; that his examination documented markedly abnormal finger-to-nose testing on the right and poor heel-to-shin testing on the right; that Plaintiff's history included the right arm "not working right," falling to the right, and slurred speech noticed by family; that his consultation noted mass effect and edema from an infarct in Plaintiff's cerebellum, an infarction that was established by the time of his evaluation; and that the treatment rendered at MedStar Harbor Hospital, and the charges therefor, were reasonable and medically necessary.

**B. George Sestric, M.D. — primary care physician, UPMC Community Medicine, Pittsburgh, Pennsylvania**

Dr. Sestric is Plaintiff's longtime primary care physician, practicing with UPMC Community Medicine, 193 43rd Street, Pittsburgh, Pennsylvania 15201. Dr. Sestric is expected to testify regarding the following subject matter: (1) Plaintiff's pre-incident medical history and baseline condition, including his management of Plaintiff's type 2 diabetes mellitus and monitoring for diabetic peripheral neuropathy, and his referrals of Plaintiff for specialty and hospital care; (2) Plaintiff's pre-incident functional independence; (3) Plaintiff's post-stroke condition, functional limitations, and course,

including that Dr. Sestric has been the physician managing Plaintiff's care following Plaintiff's discharge from inpatient rehabilitation; (4) Plaintiff's ongoing medication management and need for referral, monitoring, and future care; (5) the causal relationship between the October 18, 2024 stroke and Plaintiff's current condition, permanency, and limitations, as informed by his care and treatment; and (6) the reasonableness and necessity of the charges for the treatment he has rendered.

Summary of facts and opinions: Dr. Sestric is expected to testify that before the subject cruise Plaintiff, although managing chronic conditions including type 2 diabetes, was independent in his activities of daily living, ambulation, and self-care; that following the October 18, 2024 right cerebellar stroke Plaintiff exhibits persistent right-sided ataxia and impaired use of his dominant right hand, impaired gait requiring an assistive device, and dependence on others for transfers and activities of daily living; that Plaintiff's post-stroke deficits and care needs are causally related to the stroke; that Plaintiff's condition is permanent and requires ongoing primary-care coordination, medication management, and specialist referral; and that the treatment he has rendered, and the charges therefor, are reasonable and medically necessary.

**C. Treating physicians and clinicians — MedStar Harbor Hospital and MedStar Franklin Square Medical Center, Baltimore, Maryland**

The treating clinicians of MedStar Harbor Hospital, 3001 South Hanover Street, Baltimore, Maryland 21225 (October 20–21, 2024) — including Christopher J. Wilbert, M.D. (emergency department); Francois J. Gregoire, M.D. (admitting physician, intensive care); Jan Skrok, M.D. (radiology, October 20, 2024 head computed tomography); Raymond K. Tu, M.D., M.S. (radiology, October 20, 2024 brain magnetic resonance imaging and neck magnetic resonance angiography); and Ross McGrory, PA-C — and the

treating clinicians of MedStar Franklin Square Medical Center, 9000 Franklin Square Drive, Baltimore, Maryland 21237 (October 21–26, 2024) — including Runa Patel, M.D. (discharge physician); Jessica Stecklein, PA-C; and Kim Ellinger Tildon, PA-C — are expected to testify regarding: Plaintiff's presentation by ambulance following his medical disembarkation from the Carnival Pride; the neuroimaging performed, including computed tomography demonstrating an infarct of the central and right cerebellum, magnetic resonance imaging confirming an acute right superior cerebellar infarct with hemorrhagic transformation, and repeat computed tomography on October 21, 2024 demonstrating increased cerebellar edema and increased mass effect on the fourth ventricle; Plaintiff's admission to the intensive care unit and subsequent neurologic and neurocritical-care monitoring and management; the recommendation of acute inpatient rehabilitation; the causal relationship between the stroke and the condition they treated; and the reasonableness and necessity of the charges for that treatment.

**D. Treating physicians and therapists — Encompass Health Rehabilitation Hospital of Sewickley, Sewickley, Pennsylvania**

The treating physiatrists, physicians, and physical, occupational, and speech therapists of Encompass Health Rehabilitation Hospital of Sewickley, 351 Camp Meeting Road, Sewickley, Pennsylvania 15143, where Plaintiff was admitted on October 26, 2024 for post-stroke inpatient rehabilitation, as identified in the medical records — including Daniel Malkamaki, M.D., who managed Plaintiff's rehabilitation for his right cerebellar cerebrovascular accident with ataxia and authored Plaintiff's discharge summary — are expected to testify regarding: Plaintiff's post-stroke ataxia following the right cerebellar infarct; his functional deficits, rehabilitation course, and response to therapy; his discharge status, including his need for an assistive device; his residual impairments; the causal

relationship between the stroke and the deficits they treated; and the reasonableness and necessity of the charges for that treatment.

**E. Treating home-health and therapy providers — Gallagher Home Health Services (Bridges Therapy Associates), Bridgeville, Pennsylvania**

The treating nurses, physicians, and physical and occupational therapists of Gallagher Home Health Services (Bridges Therapy Associates), 1370 Washington Pike, Suite 401, Bridgeville, Pennsylvania 15017, which provided post-rehabilitation home health, physical therapy, occupational therapy, and related care beginning November 11, 2024, as identified in the records, are expected to testify regarding: Plaintiff's documented ataxia following cerebral infarction; his homebound status and functional limitations involving ambulation and endurance, including his need for a walker and contact assistance to leave home; the home-based care and therapy provided and Plaintiff's response; the causal relationship between the stroke and the condition they treated; and the reasonableness and necessity of the charges for that care.

## III. Reservation of rights

Plaintiff reserves the right to supplement, amend, or modify these disclosures and the reports served herewith pursuant to Fed. R. Civ. P. 26(e), including as discovery — including discovery that remains outstanding — is completed. Plaintiff reserves the right to disclose rebuttal expert testimony pursuant to Fed. R. Civ. P. 26(a)(2)(D)(ii) in response to any expert disclosure by Defendants. Plaintiff reserves the right to call as a witness at trial any expert disclosed by any party, to cross-examine any expert disclosed by Defendants, and to elicit fact testimony from any treating physician or provider identified above regardless of expert designation. Plaintiff further reserves the right to use demonstrative aids, models, diagrams, imaging, and summaries in

connection with the testimony of the witnesses disclosed herein, and to call records custodians as necessary for authentication.

The disclosure of any witness herein is not a representation that the witness will be called at trial, and Plaintiff reserves the right to elect among the disclosed witnesses.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 17, 2026, a true and correct copy of the foregoing Plaintiff's Expert Witness Disclosures, together with the expert reports and materials referenced herein, was served by electronic mail upon: Michael J. Drahos, Esq. (michael.drahos@gray-robinson.com), W. Cooper Jarnagin, Esq. (cooper.jarnagin@gray-robinson.com), and Ashley Genoese, Esq. (ashley.genoese@gray-robinson.com), GrayRobinson, P.A., 151 North Flagler Drive, Suite 650, West Palm Beach, Florida 33401, Telephone: (561) 268-5727, Counsel for Defendants.

Respectfully submitted,

**/s/ Michael A. Hoffman**
Michael A. Hoffman (Florida Bar Number: 89549)
Attorney E-mail address:
MAHoffman@1800AskFree.com
DAVID W. SINGER & ASSOCIATES, P.A.
1011 S. Federal Highway
Hollywood, Florida 33020
Telephone: (954) 920-1571
Cell: (954) 665-5290
*Attorneys for Plaintiff Michael Smith*