Smith v. Carnival Corp., et al., No. 1:25-cv-24611-GAYLES/SHAW-WILDER (S.D. Fla.)

# EXHIBIT D

Transcript of Discovery Hearing before Magistrate Judge Shaw-Wilder (Oct. 13, 2026)

*Plaintiff?s Motion for Leave to Take the Deposition of Defendant Letlhogile Rantleru, M.D., After the Discovery Cutoff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-24611-DPG

MICHAEL SMITH,

Miami, Florida

Plaintiff(s),

October 13, 2026

vs.

CARNIVAL CORPORATION, *et al.*,

Defendant(s). Pages 1 - 36

---

DISCOVERY HEARING
TRANSCRIBED FROM DIGITAL AUDIO RECORDING
BEFORE THE HONORABLE DETRA SHAW-WILDER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

FOR THE PLAINTIFF(S): MICHAEL HOFFMAN, ESQ.
DAVID W. SINGER & ASSOCIATES, P.A.
1011 South Federal Highway
Hollywood, FL 33020
954-920-1571
mahoffman@1800askfree.com

FOR THE DEFENDANT(S): ASHLEY N. GENOESE, ESQ.
GRAYROBINSON, P.A.
515 North Flagler Drive
West Palm Beach, FL 33401
561-268-5727
ashley.genoese@gray-robinson.com

TRANSCRIBED BY: Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

Thereupon, the following proceedings were held:

THE DEPUTY CLERK: Calling the case of Smith v. Carnival Corporation, *et al.*, 25 Civil 24611, Gayles.

Counsel, please announce your appearance for the record, starting with the plaintiff.

MR. HOFFMAN: Michael Hoffman on behalf of the plaintiff Michael Smith.

THE COURT: Good morning, Mr. Hoffman.

MS. GENOESE: Ashley Genoese on behalf of the defendants.

THE COURT: Good morning, Ms. Genoese.

OK. I wasn't sure if we were having a hearing, but it seems we have all made it to the right place, right time.

All right. So we are here on discovery, I guess your last remaining discovery issue since your discovery cutoff ended on October 9th. So I will hear from the plaintiff and then I will hear from you, Ms. Genoese.

Mr. Hoffman.

MR. HOFFMAN: Yes. Good morning, your Honor.

We have received production from the defendant up until October 9th. It has not been all that was ordered to be given to the plaintiff.

There are training records and there's a What's App chat group that was learned about in a recent deposition, which

is a communication among the medical team that relates to training. We have learned of handover documents, when a doctor comes on board that lists all the training that the nurses and the team has had prior to.

The deposition that we took the other day was of the defendant Dr. Maharaj, and we took the deposition of the expert witness for standard of care for the defendant.

I have not been able to depose Dr. Rantleru, who is the senior doctor.

The training records that were requested -- my first letter, your Honor -- I apologize -- I sent it on Friday after going through the deposition, and then overnight it congealed what that deposition meant and the one prior, and that is why I sent the supplement, which refocused what it was that we were looking for in discovery as it related to the matters that came up in those depositions that were --

THE COURT: Mr. Hoffman, can you come to the podium. I can't see you and I am not sure if you are being picked up on the record if you are not speaking into a microphone.

MR. HOFFMAN: OK.

THE COURT: Feel free to use your materials if you need to.

MR. HOFFMAN: All right. Thank you.

THE COURT: So I did see your supplement. It is probably easier if we take it step by step.

So you just mentioned that you have not deposed Dr. Rantleru, but my understanding is that is not a discovery dispute.

Have you all scheduled Dr. Rantleru's depo?

MS. GENOESE: No, your Honor.

THE COURT: So that is a discovery dispute but it is not one that was before me.

MS. GENOESE: Your Honor, it's defendants' position that discovery has ended, and the court declined to extend discovery, and in our motion about the extension Dr. Rantleru's deposition dates were provided in July and August.

Plaintiff's counsel decided to -- it was scheduled previously and plaintiff's counsel decided to withdraw the deposition and then to reassert another time. Discovery has passed and it was not rescheduled.

THE COURT: Dr. Rantleru was the treating doctor or the supervisor over the facility?

MS. GENOESE: That is correct, your Honor.

THE COURT: I thought I entered an order that his depo could be taken. No?

MS. GENOESE: It is not my understanding, but if that is the court's position, I have to --

THE COURT: I know there was a motion to extend the discovery cutoff and I think it was granted in part, denied in part, but limited to certain depositions.

MS. GENOESE: Yes, your Honor.

THE COURT: It was at that time Dr. Rantleru's depo was scheduled.

MS. GENOESE: No, your Honor. It was not part of the one that was allowed for. I believe it was Dr. Maharaj, which has been taken, and I think two of defendants' expert doctors, which were scheduled, one has been taken and one is still remaining.

THE COURT: Let me go to my order.

(Pause)

THE COURT: OK. So neither Dr. Maharaj or Dr. Rantleru have been deposed.

MR. HOFFMAN: Dr. Maharaj was deposed last week.

THE COURT: So you did get his done.

MR. HOFFMAN: I did get his done, yes.

THE COURT: But you did not get Dr. Rantleru's done.

MR. HOFFMAN: And it was requested recently, before the expiration date, once the discovery matters had been ruled upon and we would be receiving his personnel file and his training materials, things that we did not have, that we had asked for before, that we had received for Dr. Maharaj, but that was denied, as well as a corporate rep deposition.

Ex. C 5:23-25

THE COURT: OK. Dr. Maharaj was the treating physician the day of the incident. Dr. Rantleru was the supervisor of the facility the day of the incident.

MR. HOFFMAN: Yes. He's referred to as the senior doctor.

THE COURT: OK. So we got close to the discovery cutoff and we had these remaining depos and I said, no, get those done before the deadline, and then Dr. Parejo, you had that scheduled.

MR. HOFFMAN: Yes.

MS. GENOESE: That was completed.

THE COURT: OK. All righty.

So with respect to -- when I entered this order, you all were not able to agree to a date that was within the discovery cutoff date?

MR. HOFFMAN: Yes, your Honor. Well, they just blanketly objected to setting it within the discovery deadline or after.

We do have one more deposition scheduled, I believe, for tomorrow of the CME doctor.

THE COURT: OK.

MR. HOFFMAN: That they did agree upon.

THE COURT: So you asked to depose Dr. Rantleru before the discovery cutoff but you all couldn't reach a date.

MR. HOFFMAN: Correct. They've blanketly just refused. It wasn't about proposing dates. They just said, you're coming to us too late to set these depositions. No.

THE COURT: Is that what happened, Ms. --

7

Ex. C 7:1-5

MS. GENOESE: No, your Honor. There was a few days left in the discovery period and Dr. Rantleru and counsel were both not available during those days, the short amount of time left in discovery. He is on a ship, he is doing his doctor's duties, and there was no availability within that time frame.

THE COURT: OK. But with respect to the supplement that was provided to the court over the weekend or yesterday, you're not seeking to depose Dr. Rantleru at this time.

MR. HOFFMAN: I would like to seek, I would like to depose Dr. Rantleru. I just thought that you had already ruled on it in that earlier paperless order.

THE COURT: Well, the concept was you need to get these depos done.

MR. HOFFMAN: I have tried. I understand.

THE COURT: OK. Well, I will leave that to you. All right. Let's go with your -- what do you want to address today?

MR. HOFFMAN: Well, on page 2 it starts with the training records that were supposed to be provided for Dr. Rantleru. We've received some materials, including up until October 9th, but not the training materials that we were told exist for his position and his role.

There is a company-mandated training, as specified in policy Med 3900. There's competency assessments. We had asked about what type of training there was for drills regarding

stroke.

So at issue is to whether or not there is any stroke protocol on board, and we deposed a nurse and during her deposition she actually did state that there was a protocol and assessment, but she wasn't allowed to open it.

So we are seeking the training materials related to stroke assessments because it is very relevant in this matter, as well as the nurses who are responsible for that role.

THE COURT: OK. I will hear from the defendant.

MS. GENOESE: Yes, your Honor. It is defendants' position that everything has been complied with with the court order. Everything has been produced.

I've represented to Mr. Hoffman during the 7.1 conference on Friday evening that all of the documents have been produced.

I will tell the court that there was a little bit of delay in getting some of these, the reason being is I had asked Carnival for all of the documents in the personnel file, as ruled by the court at the prior hearing. Some of these medical training documents were not contained in the medical personnel file. They were in a separate location. So it was my misunderstanding. And so I did follow up with Carnival and said I need these specific documents. They were all produced during the discovery period.

As far as any stroke protocols, we have represented to

Mr. Hoffman several times through several discovery requests that they do not exist. I do not believe the nurse testified directly to that. I was present at the deposition. However, she also would not have full understanding of protocols that don't apply to her as she is a ship nurse and not a ship physician.

Ex. C 9:7-9

That is our position. There are no stroke protocols. There are no stroke policies that were in effect during the voyage. It is a request that's come up repeatedly. I understand why plaintiff would want them or need them, but it has been our position this entire time that there are none and that ECF-73, your Honor's order from the last discovery hearing, has been fully complied with, albeit in, unfortunately, separate parts but all within the discovery period. Everything has been produced as of the discovery cutoff.

THE COURT: OK. I have before me the supplement, and with respect to ECF No. 73, it is the defendants' representation to the court that all responsive documents have been produced. Is that correct?

MS. GENOESE: Yes, your Honor.

THE COURT: And have you provided that confirmation in writing to the plaintiff?

MS. GENOESE: I have sent email correspondence saying so. I'm not sure what other certification the court is --

MR. HOFFMAN: I have asked that -- I apologize. I have asked for that certification. I was told I would not receive it. I don't know why not.

THE COURT: OK. So we have a local rule that provides that once a party has fulfilled its obligation to produce responsive documents that they should provide a notice of completion. I didn't bring my local rules, but I am going to ask the parties to review the local rule and to make sure that that is complied with so that there is no misunderstandings or confusion or future motions with respect to these documents.

MS. GENOESE: Understood, your Honor.

THE COURT: OK. All right. So that would take care of the request that is in -- I think the request starts --

MR. HOFFMAN: Doctor -- sorry. Doctor. Your Honor, if I may. I had deposed a senior ship doctor the other day for Carnival. Much of the things that I've asked for, that I have been told don't exist, were verified as being in existence by a senior ship doctor for Carnival that's been with them since 2011.

That is one of the transcripts that I was waiting to get for this hearing so I could be more clear about what it was specifically that the ship doctor testified to.

THE COURT: All right. So that it is easy for us to track -- OK. So on subsection BA of your discovery notice, that relates to my order, ECF No. 73, which dealt with RFP-154.

The defendants' counsel has represented that all responsive documents have been produced after a diligent search.

Now you are responding -- and she is going to look at the local rule to comply with the local rule -- now you are responding that you have testimony that would suggest that there are documents that were requested that were not produced.

MR. HOFFMAN: Correct.

THE COURT: She's saying they're produced.

Are you saying they're produced or they don't exist?

MS. GENOESE: Yes, your Honor. If I may clarify.

Plaintiff's counsel brought this testimony to me ten minutes before the hearing. It's from a completely separate case. This has nothing to do with the facts here in this case. He's trying to use deposition testimony, I guess, from another ship physician in an unrelated matter, not having anything to do with this request for production, plaintiff's incident, this cruise, this voyage, this medical staff. So I'm not really sure what that testimony says. I wasn't present. I am not defense counsel on that case. I am not privy to what was asked and said by that doctor. So I am not sure where that is coming from. But as far as testimony here, there is no testimony in our case, this case of record, that somehow these documents exist and we are not producing them.

THE COURT: Mr. Smith.

MR. HOFFMAN: Yes.

THE COURT: I'm sorry. Mr. Hoffman. It is the Michaels that get me confused. Mr. Hoffman.

MR. HOFFMAN: Understood.

I'm sorry. I lost my train of thought.

THE COURT: So where we are is request for production 154. We had a hearing about that. I made rulings. The defendant has now said that they have complied. So either they are saying if a document exists, they produced it, or if it doesn't exist, they have said it doesn't exist. OK. And that they have fulfilled their obligation to produce the responsive documents.

You were saying in response that you believe you have testimony that would contradict that -- well, I'm assuming the testimony does not contradict the documents that they did produce. You're saying there are certain documents that they're saying don't exist that someone testified and said they do exist.

MR. HOFFMAN: Yes, your Honor.

THE COURT: Can we identify those documents so that we have a clear record what we are discussing here. What documents do you believe exist that the defendant has said we searched and we don't have them?

MR. HOFFMAN: One of the things that the senior doctor testified to is that they do a debriefing when issues occur with triage, and when nurses go to attend a situation, they

have a couple of checklists that they need to make sure is not happening.

First one, make sure the person is breathing and conscious. Second one is to make sure that they are not having a stroke. That is counter to the testimony provided by Dr. Maharaj, as well as the expert witness that was provided by Carnival, and that is very specific and on point to what we have going on here because when we deposed the nurse, she had said that she didn't feel that she was able to do the stroke screening and that if she did object that she could be fired, which is troubling because that is a Carnival employee that is under the independent contractor doctor, and those are the trainings that we are looking to receive from Carnival regarding the nurses and what it is that they are expected of.

THE COURT: OK. You're saying you took the deposition of someone who gave you testimony to suggest that these documents would exist or should exist.

MR. HOFFMAN: Yes, that they do exist as part of the training, and when issues arise, like a missed stroke or something of the like, there is a debriefing afterwards to troubleshoot, to look to see what went wrong.

THE COURT: OK. And then the person who testified at your depo was not one of the treating physicians or the person in charge of the facility on this particular cruise.

MR. HOFFMAN: Correct.

THE COURT: Those folks have been deposed and have, or they have not been deposed. OK.

But you took the deposition -- so, Ms. Genoese, you said the deposition was someone that had nothing to do with this incident?

MS. GENOESE: That is my understanding. I'm not part of that case, but he represented it was a different Carnival doctor, who has no involvement whatsoever with this voyage.

THE COURT: OK. So the person who was deposed was --

MR. HOFFMAN: He is a senior doctor.

THE COURT: But not on this ship.

Does he work with Dr. Rantleru or Dr. Maharaj?

MR. HOFFMAN: No, he does not.

THE COURT: So how would he have knowledge as to their training, their experience, and what happens on that ship?

MR. HOFFMAN: Well, it isn't necessarily specific to the ship. It is Carnival's training. He is a senior doctor, like Dr. Rantleru, and he had intimate knowledge of the policies and procedures that are to be applied wherever the doctor or nurses go. Whatever ship they go to, it is the same policies and procedures.

The detail that he went into as to what existed versus what we were told doesn't exist is dramatic.

THE COURT: Well, what existed when and under what --

MR. HOFFMAN: So sort of training materials are

regularly dispersed from HOC, which is the land-based part of Carnival. There are modules. There are specific trainings that we're told do exist but also don't exist. We were told by one of the nurses that there is a stroke assessment. I could pull it up on the computer. They were ordered not to by their attorney.

These are things that we've been able to get sworn testimony from. If I could depose Dr. Rantleru, who is the senior doctor on board the boat, who would be constructive to getting those questions answered.

THE COURT: OK. What document -- so you're saying you believe there is a stroke protocol or I want to go through -- OK.

In your list on Section B, which particular document, tell me what you are looking for. So there's records, stroke training records.

MR. HOFFMAN: Yes. Any training related to stroke, as well as the nursing staff's role in triage as it relates to stroke screening.

THE COURT: All right. So in Section B you're saying: Plaintiff asks that Carnival be directed within seven days to produce those records for Dr. Rantleru for the period ordered and that those records are the module completions, the competency assessments, the monthly CBD sheet and their topics, the drill records and their topics, and the monthly scenarios

and exercise records, and, in particular, every such record that addresses stroke recognition, triage, or escalation or to state in writing which of those categories do not exist.

OK. Ms. Genoese.

MS. GENOESE: Your Honor -- yes. Sorry. Go ahead.

THE COURT: With respect to that request, has Carnival produced all responsive documents located after a reasonably diligent search and/or advised the plaintiff that the documents don't exist or will pursuant to the local rule?

MS. GENOESE: Your Honor, if I just might, before I tell the court. These specific documents, as I am reading them, none of these were requested in the initial request for production. These were requested on Saturday or Sunday in the supplemental statement to this court. So I cannot say for certain because there are specific documents in here that are listed that were never anywhere in the initial request for production.

THE COURT: Mr. Smith. Hoffman.

MR. HOFFMAN: No worries.

We only learned about their existence with their late-produced discovery, I believe as recent as October 1st and October 9th.

THE COURT: So the initial threshold question we need to answer is were these documents requested by a particular request for production of documents. So are these documents

that I just read into the record from Section B4A on page 3, are those documents that were requested in RFP-154?

(Pause)

MR. HOFFMAN: The plaintiff's third request for production, from May 27, 2026, I ask for the --

THE COURT: Hold on.

MR. HOFFMAN: Yes, your Honor. I'm sorry.

THE COURT: That would be completely unfair to the defendant because you moved to compel RFP-154, and that is what they have been working on and responding to.

MR. HOFFMAN: So 15 --

THE COURT: So my understanding is that the documents that I just read into the record are not documents that have been responsive to 154.

MR. HOFFMAN: No, your Honor.

THE COURT: Or that have been --

MR. HOFFMAN: They are. All training records, orientation checklists, on-the-job training documentation under CCL Med 3903, medical staff handover, and CCL Med 3903, D11A1, medical staff on-the-job training checklist, competency assessments, continuing professional development records for Dr. Rantleru during the three years preceding the voyage through the present.

So we've been seeking what terms the doctors receive regarding training from the outset.

THE COURT: Ms. Genoese.

MS. GENOESE: Yes, your Honor. In the supplemental production we have produced all of those records or advised that they do not exist for Dr. Rantleru.

THE COURT: OK. So now we agree that 154, RFP-154 requests the documents that plaintiff is moving to compel at B4A, page 3, and it is Carnival's position that the documents have in fact been produced or you have advised that they don't exist.

MS. GENOESE: Yes, your Honor.

THE COURT: OK. All right. So I am going to deny that motion to compel, order Carnival to produce by 5 p.m. today the notice of completion required by the local rules with respect to RFP-154.

Ex. C 18:15-19

Plaintiff, however, if you have some evidence that Carnival upon submitting that document or even after this hearing have misrepresented to the court that these documents have been produced, then you can -- this would be without prejudice to you bringing the issue before the court.

MR. HOFFMAN: Thank you, Judge.

THE COURT: OK. So the next would be request No. 114. With respect to shipboard communications.

Ex. C 18:23-19:17

MR. HOFFMAN: Yes. So Carnival had stated that all emails had been deleted but the contents were captured in the iCare log, and that was the only communications that we were

Ex. C
18:23-19:17

told of. But when we deposed Dr. Maharaj, he let us know that the Carnival medical team has a What's App group that is specific to training and their schedules and relates to what needs to be covered by the team. It is not about patients, but it is meant to cover the logistics and to communicate among the team. We were not told about that What's App group.

We were also told that all communications, in addition to the What's App group, go through the ship's Cisco telephones. One of the issues that we're trying to understand is when the senior doctor had been notified of Mr. Smith's medical disembarkation, when the junior doctor had made that recommendation, because that is what the requirements of the policy and the procedures say need to be done. The senior doctor needs to be contacted once the medical disembarkation is on the horizon.

So, again, we are looking for those communications, which we have now been told exist.

THE COURT: Ms. Genoese.

MS. GENOESE: Yes, your Honor. First I would like to point out that none of that is responsive to 114, which is the request for production at issue, and specifically had responded that there are no audio recordings, voicemails, transcripts and call summaries of bridge to medical, medical to bridge, security to medical, and medical to security, radio or telephone communications aboard the vessel.

The court had limited it to, I believe, to plaintiff or plaintiff's incident. I have already responded to that.

I do want to make the court aware, this is not some sort of gotcha, we were hiding the ball. Dr. Maharaj testified there is no What's App communications about plaintiff and the subject incident. It is my understanding -- I wasn't at the deposition -- it is my understanding from the testimony that he is off that group chat once he leaves the contract. So none of this exists, to the extent that it is even responsive to 114.

THE COURT: Well, the What's App group chat, did Carnival check to see if there is a What's App group chat and does it still exist and is there any communication regarding the plaintiff and the incident that is at issue in this case?

MS. GENOESE: Dr. Maharaj testified that there were no communications about the plaintiff and the incident. None of it is responsive to 114, but that testimony was at his deposition last week.

THE COURT: So why wouldn't it be responsive to 114 if it is narrowed to all communications, assuming it existed, a What's App group amongst the medical staff, why wouldn't that be responsive to 114?

MS. GENOESE: Well, as I read it, your Honor, this says bridge to medical, medical to bridge, security to medical, and medical to security. I don't see anywhere it says medical personnel.

Ex. C 21:17-22:25

THE COURT: OK.

MS. GENOESE: But, your Honor, like I said, it is not a -- this is a poorly-worded request. There is no gotcha. Dr. Maharaj has already testified that none exist related to plaintiff and plaintiff's incident, which is what the court had limited this request to.

THE COURT: OK. So, Mr. Hoffman, you were at the depo. Did Dr. Maharaj testify that as far as he recalled there was no communication regarding plaintiff in the What's App?

MR. HOFFMAN: The What's App groups are not about patient care, specific patients, but it does address patient care, training, scheduling. It does have the potential to address the issues of the stroke that were missed. These are things that Carnival -- I believe counsel wasn't even aware of this What's App group prior to my learning about it from Dr. Maharaj the other day.

THE COURT: OK. So 114 says, it is communications regarding the particular incident. That's what we were discussing on 114.

Now you're saying that there's general communications about training, etc., that may be responsive but wouldn't be responsive to 114.

MR. HOFFMAN: Correct, your Honor.

THE COURT: Is there a request for production that that would be responsive to?

Ex. C
21:17-22:25

(Pause)

MR. HOFFMAN: No. 118: All written communications, including emails, text message, MS Teams or Slack message, ticketing entries, application log entries, and chat messages between any member of the vessel's medical staff, including the senior ship position, the ship's physician, and HOC concerning plaintiff, plaintiff's medical condition, plaintiff's treatment, or plaintiff's medical disembarkation from October 18, 2024 through November 30, 2024.

THE COURT: OK. But that is at 114. So I am going to deny the motion to compel response to request for production 114.

MR. HOFFMAN: We were not told of its existence prior to the deposition. Had I known a What's App chat group existed on an institutional basis at Carnival with the medical teams, I would have requested it. It was just never communicated or provided to us.

THE COURT: Well, that is a different issue than compelling Carnival to produce something that wasn't requested. I believe that would be a different approach.

I mean, if you take a depo the day before the discovery cutoff, then you run into these issues. So I think you would need to make a decision about what you want to do with that, if you believe it is important enough to seek more time to discover that information.

MR. HOFFMAN: Understood.

THE COURT: So with respect to 114, I am going to deny the motion to compel, request for production 114.

OK. What is the next item, Mr. Hoffman?

MR. HOFFMAN: Request No. 129. I believe this is specific to the -- 129 states: All SeaCare system audit logs and audit trails for plaintiff's electronic medical records, including user access entries, record entries, modifications, edits, deletions, addendums, electronic signature events, and exports from October 18th through the present.

One of the issues in this case has been that against medical advice forms were allegedly signed by my client, and there was a digital time stamp on the document, and counsel had represented to the court that, to the best of their knowledge, this was done on a tablet and that was when the digital signature was entered.

Ex. C 23:17-19

That is not what Dr. Maharaj testified to. Dr. Maharaj testified that he printed these documents at that time. He did not indicate when the documents were signed.

So we are trying to get whatever metadata there is related to those documents when they were scanned.

It's been an issue of controversy throughout this case, these against-medical-advice documents that were created within the first hour of Mr. Smith being in the infirmary and, I think very disturbingly, that it was printed about eight

Ex. C
24:6-12

minutes after he received a sedative that would put him to sleep within about a half hour.

So we were looking to learn more about that time line and whether or not Mr. Smith even had the capacity to sign.

THE COURT: Ms. Genoese.

MS. GENOESE: Yes, your Honor. To Mr. Hoffman's point, I did want to clarify that at the hearing I did have the misunderstanding that it was signed on a digital tablet. I did, at the hearing, represent to this court that that was only my understanding of the facts. It was determined that this was actually a printed-out sheet, which was included in our response pursuant to the court's order.

We have looked for any digital copies to show any sort of timeline or tracking. None exist.

I was with Carnival when we made this search. We did it altogether to ensure I can see physically what they are looking for. I did represent that to counsel.

As far as this issue of audit trails, of when Mr. Smith was given medication that may have impacted his ability to sign, plaintiff's own experts concede that Mr. Smith understood what he was signing. That is in their own expert reports and testimony. Stroke does not affect cognition. There is no issue of competency, especially with this medication.

I would like to point out for the court, even if an

audit trail was done, which we do think is not proportional to the needs of this case, as we said in our last discovery hearing, an audit trail would not be able to determine whether this medication was given, when the documents were signed. An audit trail would simply have when the time it was entered into the system, which is the exact same information that is printed on the sheet.

There is going to be nothing to try to make it more clear. If a doctor is giving a medication at 12:00 p.m. and it's entered at 12:03 p.m., there is no magical way that somehow an audit trail would be able to determine, oh, it was actually 12:00 p.m., not 12:03 p.m. It is simply, just like most land-based hospitals, when it's entered into the system.

So any digital tracings would be the exact same as what is printed in the medical chart, which has all the time stamps of when the document and the notes were entered into the system. So I don't understand the request for an audit trail, and I believe this was addressed at the last discovery hearing.

Ex. C 25:19-26:5

THE COURT: Yes, we did discuss this in detail at the last discovery hearing, but I want to make sure I understand because I'm hearing you acknowledge that my ruling at that hearing was based on the understanding that the form was signed on a tablet and there was a time stamp on the tablet that would have indicated the time that it was signed.

Dr. Maharaj has now testified last week that the form

Ex. C
25:19-26:5

was, in fact, printed and the time stamps show when the forms were printed. We don't know, the time stamps don't indicate when they were signed, and they were signed by both Carnival staff and the plaintiff. Is that correct?

MS. GENOESE: Yes, by hand.

THE COURT: So the forms were printed out, given to the plaintiff, who signed them.

Mr. Hoffman, are you trying to track down the time that he signed them?

MR. HOFFMAN: Yes. We're trying to understand the timing when Mr. Smith was in the infirmary, when he was medicated, when he signed the documents.

Counsel had touched upon when the medication was administered and the difficulty in acquiring that information. This is the type of medication that needs to be signed out by a doctor and a nurse together in a log. So there should be a log for when the Promethazin was taken out from the inventory for the purpose of injection, which was testified that is when it would be closest in time to when that was administered versus the order in the medical records.

THE COURT: Well, this request for production that you are moving to compel is 129, and that doesn't speak to when the medication was signed out. This is when the against-medical-advice form was signed.

MR. HOFFMAN: Well, I'm asking for, in 129, all

SeaCare system audit logs and audit trails for plaintiff's electronic medical records, including record entries, and there are a lot of modifications as well in the medical records, and we want to know if there were deletions. There is a --

THE COURT: Wait. Hold on.

MR. HOFFMAN: Yes, your Honor.

THE COURT: So what you are asking in your notice of discovery dispute and motion to compel, you're seeking to compel, with respect to RFP-129, and you're asking me to direct Carnival to produce the metadata for the two against-medical-advice forms. Above all, when and by whom the signed forms were scanned or uploaded into SeaCare. That is not when the medication was signed out or when it was given.

MR. HOFFMAN: It is one of the reasons I wanted to wait to receive the transcript from yesterday and not have this hearing just yet so I could fill in, but yes, you are correct, your Honor, it is not specifically.

THE COURT: So the situation, I'm trying to understand how metadata would be helpful given that Dr. Maharaj has testified that the time stamp shows when the documents were printed out and then at some point they were signed.

Why would you want metadata or Carnival to do a search for that, for some type of audit trail for those forms? How would that be relevant and proportional to this case?

MR. HOFFMAN: The document had to have been scanned

into the system. So we are just trying to recreate the timeline, and we believe this would be one of the things that would help us.

It is also very specific to the defense of Mr. Smith, assuming the risk of not receiving care. They are putting this on him. He is denying ever signing this document, as well as the witness that was with him. They are of the impression that they definitely did not sign.

THE COURT: But Dr. Maharaj, now Dr. Maharaj's testimony makes it a different type of analysis, right, because Dr. Maharaj is testifying that they were printed out. So that is like a forgery.

I mean, there are forms -- you all gave them to me last time -- that were, in fact, signed by someone, purported to be signed by Mr. Smith and his witness. You need Carnival to go and try to find the audit -- you want to know when the document was scanned, it was signed and when it was scanned into the system?

MR. HOFFMAN: We want to know if that is even what was created at that time because the signature pages are on a separate page from the text.

THE COURT: And you want to know when the documents were scanned, the signed documents were scanned and placed into the system.

MR. HOFFMAN: Yes, your Honor.

THE COURT: And that would be relevant to?

MR. HOFFMAN: Well, if it was close in time to when it was printed, we could assume that it was signed close in time to when it was printed, as well as close in time to when the sedative was given.

THE COURT: Well, I thought you said your client didn't sign it.

MR. HOFFMAN: He was on a sedative. He does not recall signing it, and his brother-in-law, who was with him, has stated that there is no way he would sign against medical advice. He was actually staying in the infirmary to make sure that they did take care of him and did not send him back to his cabin, as they were trying to do.

THE COURT: Isn't that the evidence that you need -- like you want to do a metadata search to find out when the forms were placed, were scanned and placed in Carnival's system?

MR. HOFFMAN: If that is the only information that is obtainable from any electronic source regarding this document, yes.

THE COURT: OK. So at the time of the hearing you were trying to determine whether when the signatures were placed on the document. Then we note there were time stamps. At that time we believe that the time stamps were indication of when it was signed. Now we know that the time stamps are

indication of when they were printed.

What I am missing is how, when Carnival decided to scan the documents, how is that going to be relevant or helpful to you in your claim or even Carnival's defense.

I mean, what if Carnival sits it in an inbox for someone, data entry to put it in and it gets posted a week later, two weeks later. Maybe they do it after the cruise. How is that helpful, especially given that discovery is completed and you have the testimony of both the witness and your client and everybody else who was in the room?

MR. HOFFMAN: No, your Honor, I understand.

THE COURT: All right. So I am going to deny the request for production, compel request for production 129. Deny the motion to compel revised response to RFP No. 129.

By the way, just so you have a full record, my understanding from Carnival is that they don't keep that audit trail.

Has anything changed from your response, Ms. Genoese?

MS. GENOESE: Your Honor, the court had asked us to look into digital copies of the documents --

THE COURT: Yes.

MS. GENOESE: -- which we did, and there are no digital copies of the documents with the data that would show the time frame of the signature because, as we now know, it is handwritten. That was determined in our search. But yes,

there are no digital copies of these documents which would have information such as this.

THE COURT: OK. All right. So the next issue.

Mr. Hoffman, what is your next issue?

MR. HOFFMAN: My expert witness, Dr. Gomez, more discovery has come in since he created his report. Depositions have been taken. I would like for him to be able to supplement his report with the materials learned since he drafted his report and then to, at plaintiff's expense, allow a continuation of his deposition by defendant to address those new opinions based on what we have learned in discovery since.

THE COURT: Well, you are saying that you want him to sit for a deposition to explain a change in his opinion?

MR. HOFFMAN: I want to be able to supplement his report, and in doing so we understand that the defense is going to want to depose him about whatever new opinions are there. We're telling the court that we would take on that expense. But much has been learned since his report, including the depositions of Dr. Maharaj. I would still like to take the senior doctor, Dr. Rantleru's, deposition.

Ex. C 31:21-32:2

THE COURT: I think that would probably be more appropriate to ask Judge Gayles because, I mean, the situation that you are in, I'm not sure why your experts were done before discovery because generally experts have the completion of discovery, then you do your expert disclosures, and then you do

Ex. C 31:21-32:2

your expert depositions. Apparently, that has happened in reverse in this case, and I am not sure why Judge Gayles did it that way, and I am sure he had a reason. So I don't want to change that. I think you should go to Judge Gayles and ask for that.

Ms. Genoese, did you want to be heard on that topic?

MS. GENOESE: I was just going to express what was in the order. I believe it was -- there was a request before, with an amended scheduling order, to extend the discovery deadlines, and I believe it specifically did not request to extend the experts. So I think that is just why the deadlines appear the way it is.

THE COURT: So before, under your scheduling order, it was the way it normally works, where the fact discovery ends and then you do your expert discovery?

MS. GENOESE: I believe so. I believe that was the case.

THE COURT: And then you all extended fact discovery --

MS. GENOESE: But did not --

THE COURT: -- but you kept the expert.

Yes. I would bring that to Judge Gayles.

MR. HOFFMAN: OK.

Ex. C 32:24-34:4

THE COURT: I mean, just as a practical matter, it avoids these situations, and perhaps that was an oversight.

Ex. C 32:24-34:4

Of course, you all can meet and confer and agree, if you can.

It makes sense that no one's surprised or caught off guard because the expert is now saying, oh, I read the deposition of so-and-so and it's altered my opinion, and then you all have not had an opportunity to probe that.

I am going to direct you to make that request to Judge Gayles. So with respect to your motion to compel to reopen to allow Dr. Gomez to supplement his report and to allow limited discovery, after the discovery cutoff, I'm directing you in my order to make that request of Judge Gayles.

MR. HOFFMAN: OK. Thank you.

THE COURT: All right. Are there any other issues, Mr. Hoffman?

MR. HOFFMAN: I want to clarify. May I depose Dr. Rantleru?

THE COURT: Well, I think you have to make that a formal request so they have an opportunity to respond, because you didn't move to compel -- you didn't move to take the deposition of Dr. Rantleru out -- again, you did move before, but I didn't view that as you asking to take the deposition of Dr. Rantleru outside of the discovery.

What I ruled is -- maybe you did -- I ruled that you should take the deposition and get it done within the discovery cutoff.

Ex. C 32:24-34:4

Now something has transpired between you all. Maybe it would be appropriate, but you have to make that motion so that they have an opportunity to be prepared to respond to that request.

MR. HOFFMAN: Thank you, your Honor. I will.

THE COURT: But if I understand it, since we are all here, my understanding is that you all have been, obviously, I'm assuming, talking about deposing the main witnesses in the case throughout the whole discovery period, that at one point Dr. Rantleru was, in fact, scheduled for deposition and that deposition was canceled by one of the parties, and then I said, hey, get it done before the discovery cutoff, and then apparently you all were not able to do it. But you did take Dr. Maharaj.

MR. HOFFMAN: Yes, your Honor.

THE COURT: So the doctor who was there who gave the advice, who gave the medication or not, whatever that incident,

Ex. C 34:18-19

he has been deposed. The question is whether or not the person who is in charge of the facility will be deposed.

MR. HOFFMAN: Yes, your Honor.

THE COURT: Is that correct? OK.

Ex. C 34:22-35:1

All right. You should make that motion and the court will consider it and give the defendant an opportunity to be heard on that --

MR. HOFFMAN: Yes.

Ex. C 34:22-35:1

THE COURT: -- request.

MR. HOFFMAN: OK.

THE COURT: Is there anything further you'd like to raise, Mr. Hoffman?

I know there's a lot of issues that you were bringing to my attention, but I don't believe there was a request for relief.

MR. HOFFMAN: Right. I didn't have the transcripts to base it clearly, so I withheld representations in that. Now that I have the transcripts, I will revisit, and if there is something appropriate, I will file a motion.

THE COURT: OK.

MR. HOFFMAN: Thank you, your Honor.

THE COURT: All righty.

Ms. Genoese, is there anything you'd like to bring to the court?

MS. GENOESE: No, your Honor. I believe the only remaining dispute that we have is the motion for protective order and sanctions, which is set for hearing before this court.

I will represent to the court, and I've already advised plaintiff's counsel, that we do have a conflict as we are specially set for trial that week, but we will propose the alternative dates, as this court instructed, for rescheduling that hearing.

THE COURT: OK. All righty. Great. OK. You all have a great rest of the day.

MR. HOFFMAN: Thank you, your Honor.

(Adjourned)

C E R T I F I C A T E

I hereby certify that the foregoing is an accurate transcription to the best of my ability of the digital audio recording in the above-entitled matter.

October 15, 2026 s/ Joanne Mancari
Joanne Mancari, RPR, CRR, CSR
Court Reporter
jemancari@gmail.com

MR. HOFFMAN: [67]
MS. GENOESE: [31] 2/10 4/5 4/8 4/18 4/21 5/1 5/4 6/8 7/1 8/10 9/21 9/24 10/11 11/10 14/6 16/5 16/10 18/2 18/10 19/19 20/14 20/22 21/2 24/6 26/5 30/19 30/22 32/7 32/16 32/20 35/17
THE COURT: [96]
THE DEPUTY CLERK: [1] 2/3

**1**

1011 [1] 1/13
114 [13] 18/21 19/20 20/9 20/16 20/18 20/21 21/17 21/19 21/22 22/10 22/12 23/2 23/3
118 [1] 22/2
129 [7] 23/5 23/6 26/22 26/25 27/9 30/13 30/14
12:00 [2] 25/9 25/12
12:03 [2] 25/10 25/12
13 [1] 1/5
15 [2] 17/11 36/12
154 [8] 10/25 12/6 17/2 17/9 17/14 18/5 18/5 18/14
1571 [1] 1/14
18 [1] 22/9
1800askfree.com [1] 1/15
18th [1] 23/10
1st [1] 16/21

**2**

2011 [1] 10/19
2024 [2] 22/9 22/9
2026 [3] 1/5 17/5 36/12
24611 [1] 2/4
25 [1] 2/4
25-CV-24611-DPG [1] 1/2
27 [1] 17/5

**3**

30 [1] 22/9
33020 [1] 1/14
33401 [1] 1/18
36 [1] 1/7
3900 [1] 7/24
3903 [2] 17/19 17/19

**5**

515 [1] 1/18
561-268-5727 [1] 1/19
5727 [1] 1/19

**7**

7.1 [1] 8/13
73 [3] 9/12 9/18 10/25

**9**

954-920-1571 [1] 1/14
9th [4] 2/17 2/22 7/21 16/22

**A**

ability [2] 24/20 36/9
able [9] 3/8 6/11 13/9 15/7 25/3 25/11 31/7 31/14 34/13
aboard [1] 19/25
about [20] 2/25 4/10 6/23 7/25 10/21 12/6 16/20 19/4 19/6 20/5 20/15 21/10 21/15 21/21 22/23 23/25 24/2 24/3 31/16 34/8
above [2] 27/11 36/10
above-entitled [1] 36/10
access [1] 23/8
accurate [1] 36/8
acknowledge [1] 25/21
acquiring [1] 26/14
actually [4] 8/4 24/11 25/12 29/11
addendums [1] 23/9
addition [1] 19/7
address [4] 7/16 21/11 21/13 31/10
addressed [1] 25/18
addresses [1] 16/2
Adjourned [1] 36/4
administered [2] 26/14 26/19
advice [6] 23/12 23/23 26/24 27/11 29/11 34/17
advised [4] 16/8 18/3 18/8 35/22
affect [1] 24/22
after [8] 3/11 6/15 11/2 16/7 18/16 24/1 30/7 33/10
afterwards [1] 13/20
again [2] 19/16 33/20
against [5] 23/11 23/23 26/24 27/11 29/10
against-medical-advice [3] 23/23 26/24 27/11
agree [4] 6/11 6/19 18/5 33/1
ahead [1] 16/5
al [2] 1/6 2/4
albeit [1] 9/13
all [46]
allegedly [1] 23/12
allow [3] 31/9 33/9 33/9
allowed [2] 5/5 8/5
already [4] 7/10 20/2 21/4 35/21
also [4] 9/4 15/3 19/7 28/4
altered [1] 33/5
alternative [1] 35/24
altogether [1] 24/16
am [14] 3/18 10/7 11/18 11/19 11/20 16/11 18/11 22/10 23/2 30/2 30/12 32/2 32/3 33/7
amended [1] 32/9
among [2] 3/1 19/5
amongst [1] 20/20
amount [1] 7/3
analysis [1] 28/10
announce [1] 2/5
another [2] 4/14 11/14
answer [1] 16/24
answered [1] 15/10
any [10] 8/2 8/25 15/17 20/12 22/5 24/13 24/13 25/14 29/19 33/13
anything [4] 11/15 30/18 35/3 35/15
anywhere [2] 16/16 20/24
apologize [2] 3/11 10/1
App [12] 2/24 19/2 19/6 19/8 20/5 20/10 20/11 20/20 21/9 21/10 21/15 22/14
apparently [2] 32/1 34/13
appear [1] 32/12
appearance [1] 2/5
APPEARANCES [1] 1/11
application [1] 22/4
applied [1] 14/19
apply [1] 9/5
approach [1] 22/20
appropriate [3] 31/22 34/2 35/11
are [60]
arise [1] 13/19
as [45]
ASHLEY [2] 1/17 2/10
ashley.genoese [1] 1/19
ask [4] 10/8 17/5 31/22 32/4
asked [9] 5/21 6/20 7/24 8/17 10/1 10/2 10/16 11/19 30/19
asking [4] 26/25 27/7 27/9 33/21
asks [1] 15/21
assessment [2] 8/5 15/4
assessments [4] 7/24 8/7 15/24 17/21
ASSOCIATES [1] 1/13
assume [1] 29/3
assuming [4] 12/13 20/19 28/5 34/8
at [29] 5/2 7/8 8/2 8/19 9/3 11/3 13/22 18/6 19/21 20/6 20/13 20/16 21/7 22/10 22/15 23/18 24/7 24/9 25/9 25/10 25/18 25/19 25/21 27/21 28/20 29/21 29/24 31/9 34/9
attend [1] 12/25
attention [1] 35/6
attorney [1] 15/6
audio [3] 1/9 19/22 36/9
audit [13] 23/6 23/7 24/18 25/1 25/3 25/5 25/11 25/17 27/1 27/1 27/23 28/16 30/16
August [1] 4/11
availability [1] 7/5
available [1] 7/3
avoids [1] 32/25
aware [2] 20/3 21/14

**B**

B4A [2] 17/1 18/7
BA [1] 10/24
back [1] 29/12
ball [1] 20/4
base [1] 35/9
based [4] 15/1 25/13 25/22 31/11
basis [1] 22/15
be [42]
Beach [1] 1/18
because [14] 8/7 13/8 13/11 16/15 17/9 19/12 25/21 28/10 28/20 30/24 31/22 31/24 33/4 33/18
been [35] 2/22 3/8 5/6 5/7 5/12 5/18 8/11 8/12 8/15 9/11 9/13 9/15 9/20 10/17 10/18 11/2 14/1 14/2 15/7 17/10 17/14 17/16 17/24 18/8 18/18 18/24 19/10 19/17 23/11 23/22 27/25 31/7 31/18 34/7 34/18
before [17] 1/10 4/7 5/17 5/21 6/5 6/20 9/17 11/12 16/10 18/19 22/21 31/23 32/8 32/13 33/20 34/12 35/19
behalf [2] 2/7 2/10
being [4] 3/18 8/17 10/17 23/24
believe [21] 5/5 6/16 9/2 12/12 12/21 15/12 16/21 20/1 21/14 22/20 22/24 23/5 25/18 28/2 29/24 32/8 32/10 32/16 32/16 35/6 35/17
best [2] 23/14 36/9
between [2] 22/5 34/1
bit [1] 8/16
blanketly [2] 6/14 6/22
board [3] 3/3 8/3 15/9
boat [1] 15/9
both [3] 7/3 26/3 30/9
breathing [1] 13/3
bridge [4] 19/23 19/23 20/23 20/23
bring [3] 10/7 32/22 35/15
bringing [2] 18/19 35/5
brother [1] 29/9
brother-in-law [1] 29/9
brought [1] 11/11

B

but [40]

C

cabin [1] 29/13
call [1] 19/23
Calling [1] 2/3
came [1] 3/15
can [6] 3/17 12/19 18/18 24/16 33/1 33/2
can't [1] 3/18
canceled [1] 34/11
cannot [1] 16/14
capacity [1] 24/4
captured [1] 18/24
care [6] 3/7 10/12 21/11 21/12 28/5 29/12
CARNIVAL [29] 1/6 2/4 8/18 8/22 10/16 10/18 13/7 13/11 13/13 14/7 15/2 15/21 16/6 18/12 18/16 18/23 19/2 20/11 21/14 22/15 22/19 24/15 26/3 27/10 27/22 28/15 30/2 30/5 30/16
Carnival's [4] 14/17 18/7 29/16 30/4
case [16] 1/2 2/3 11/13 11/13 11/19 11/22 11/22 14/7 20/13 23/11 23/23 25/2 27/24 32/2 32/17 34/9
categories [1] 16/3
caught [1] 33/3
CBD [1] 15/24
CCL [2] 17/19 17/19
certain [3] 4/25 12/15 16/15
certification [2] 9/25 10/2
certify [1] 36/8
change [2] 31/13 32/4
changed [1] 30/18
charge [2] 13/24 34/19
chart [1] 25/15
chat [6] 2/25 20/8 20/10 20/11 22/4 22/14
check [1] 20/11
checklist [1] 17/20
checklists [2] 13/1 17/18
Cisco [1] 19/8
Civil [1] 2/4
claim [1] 30/4
clarify [3] 11/10 24/7 33/15
clear [3] 10/21 12/20 25/9
clearly [1] 35/9
client [3] 23/12 29/6 30/10
close [4] 6/3 29/2 29/3 29/4
closest [1] 26/19
CME [1] 6/17
cognition [1] 24/22
come [3] 3/17 9/9 31/6
comes [1] 3/3
coming [2] 6/24 11/20
communicate [1] 19/5
communicated [1] 22/16
communication [3] 3/1 20/12 21/9
communications [11] 18/22 18/25 19/7 19/16 19/25 20/5 20/15 20/19 21/17 21/20 22/2
company [1] 7/23
company-mandated [1] 7/23
compel [12] 17/9 18/6 18/12 22/11 23/3 26/22 27/8 27/9 30/13 30/14 33/8 33/19
compelling [1] 22/19
competency [4] 7/24 15/24 17/20 24/23
completed [2] 6/8 30/9
completely [2] 11/12 17/8
completion [3] 10/7 18/13 31/24
completions [1] 15/23
complied [4] 8/11 9/13 10/9 12/7
comply [1] 11/4
computer [1] 15/5
concede [1] 24/20
concept [1] 7/12
concerning [1] 22/6
condition [1] 22/7
confer [1] 33/1
conference [1] 8/14
confirmation [1] 9/22
conflict [1] 35/22
confused [1] 12/2
confusion [1] 10/10
congealed [1] 3/12
conscious [1] 13/4
consider [1] 34/23
constructive [1] 15/9
contacted [1] 19/14
contained [1] 8/20
contents [1] 18/24
continuation [1] 31/10
continuing [1] 17/21
contract [1] 20/8
contractor [1] 13/12
contradict [2] 12/13 12/14
controversy [1] 23/22
copies [4] 24/13 30/20 30/23 31/1
corporate [1] 5/22
CORPORATION [2] 1/6 2/4
correct [9] 4/18 6/22 9/20 11/7 13/25 21/23 26/4 27/16 34/21
correspondence [1] 9/24
could [7] 4/20 10/21 13/10 15/4 15/8 27/16 29/3
couldn't [1] 6/21
counsel [12] 2/5 4/12 4/13 7/2 11/1 11/11 11/19 21/14 23/13 24/17 26/13 35/22
counter [1] 13/5
couple [1] 13/1
course [1] 33/1
court [27] 1/1 1/22 4/9 7/7 8/11 8/16 8/19 9/19 9/25 16/11 16/14 18/17 18/19 20/1 20/3 21/5 23/14 24/9 24/25 30/19 31/17 34/22 35/16 35/20 35/21 35/24 36/13
court's [2] 4/22 24/12
cover [1] 19/5
covered [1] 19/4
created [3] 23/23 28/20 31/6
CRR [2] 1/22 36/12
cruise [3] 11/17 13/24 30/7
CSR [2] 1/22 36/12
cutoff [10] 2/16 4/24 6/4 6/12 6/21 9/16 22/22 33/10 33/25 34/12
CV [1] 1/2

D

D11A1 [1] 17/19
data [2] 30/6 30/23
date [4] 5/18 6/11 6/12 6/21
dates [3] 4/11 6/23 35/24
DAVID [1] 1/13
day [7] 3/5 5/24 5/25 10/15 21/16 22/21 36/2
days [3] 7/1 7/3 15/21
deadline [2] 6/5 6/14
deadlines [2] 32/10 32/11
dealt [1] 10/25
debriefing [2] 12/24 13/20
decided [3] 4/12 4/13 30/2
decision [1] 22/23
declined [1] 4/9
defendant [11] 1/7 1/17 2/21 3/6 3/7 8/9 12/7 12/21 17/9 31/10 34/23
defendants [1] 2/11
defendants' [5] 4/8 5/6 8/10 9/18 11/1
defense [4] 11/19 28/4 30/4 31/15
definitely [1] 28/8
delay [1] 8/17
deleted [1] 18/24
deletions [2] 23/9 27/4
denied [2] 4/24 5/22
deny [5] 18/11 22/11 23/2 30/12 30/14
denying [1] 28/6
depo [6] 4/4 4/19 5/2 13/23 21/8 22/21
depos [2] 6/4 7/13
depose [7] 3/8 6/20 7/8 7/10 15/8 31/16 33/15
deposed [12] 4/1 5/12 5/13 8/3 10/15 13/8 14/1 14/2 14/9 19/1 34/18 34/19
deposing [1] 34/8
deposition [27] 2/25 3/5 3/6 3/12 3/13 4/11 4/14 5/22 6/16 8/4 9/3 11/14 13/15 14/3 14/4 20/7 20/17 22/14 31/10 31/13 31/20 33/5 33/20 33/21 33/24 34/10 34/11
depositions [6] 3/16 4/25 6/24 31/6 31/19 32/1
detail [2] 14/22 25/19
determine [3] 25/3 25/11 29/22
determined [2] 24/10 30/25
DETRA [1] 1/10
development [1] 17/21
did [30] 3/24 5/14 5/15 5/16 5/20 6/19 8/4 8/22 12/14 13/10 20/10 21/8 23/19 24/7 24/7 24/9 24/15 24/17 25/19 28/8 29/12 29/12 30/22 32/2 32/6 32/10 32/20 33/20 33/23 34/13
didn't [7] 10/7 13/9 29/7 33/19 33/19 33/21 35/8
different [4] 14/7 22/18 22/20 28/10
difficulty [1] 26/14
digital [10] 1/9 23/13 23/15 24/8 24/13 25/14 30/20 30/23 31/1 36/9
diligent [2] 11/2 16/8
direct [2] 27/9 33/7
directed [1] 15/21
directing [1] 33/10
directly [1] 9/3
disclosures [1] 31/25
discover [1] 22/25
discovery [45]
discuss [1] 25/19
discussing [2] 12/20 21/19
disembarkation [3] 19/11 19/14 22/8
dispersed [1] 15/1
dispute [4] 4/3 4/6 27/8 35/18
DISTRICT [2] 1/1 1/1
disturbingly [1] 23/25
do [27] 6/16 7/16 9/2 9/2 11/13 11/16 12/17 12/21 12/24 13/9 13/18 14/4 15/3 16/3 18/4 20/3 22/23 25/1 27/22 29/13 29/15 30/7 31/25 31/25 32/15 34/13 35/22
doctor [25] 3/2 3/9 4/16 6/2 6/17 10/14 10/14 10/15 10/18 10/22 11/20 12/23 13/12 14/8 14/10 14/17 14/20 15/9 19/10 19/11 19/14 25/9 26/16 31/20 34/16

D

doctor's [1] 7/4
doctors [2] 5/6 17/24
document [11] 12/8 15/11 15/14 18/16 23/13 25/16 27/25 28/6 28/17 29/19 29/23
documentation [1] 17/18
documents [43]
does [8] 12/14 14/12 14/13 20/12 21/11 21/12 24/22 29/8
doesn't [4] 12/9 12/9 14/23 26/22
doing [2] 7/4 31/15
don't [16] 9/5 10/3 10/17 11/9 12/16 12/22 15/3 16/9 18/8 20/24 25/17 26/2 26/2 30/16 32/3 35/6
done [11] 5/14 5/15 5/16 6/5 7/13 19/13 23/15 25/1 31/23 33/24 34/12
down [1] 26/8
DPG [1] 1/2
Dr [1] 6/5
Dr. [50]
Dr. Gomez [2] 31/5 33/9
Dr. Maharaj [22] 3/6 5/5 5/11 5/13 5/21 5/23 13/6 14/12 19/1 20/4 20/14 21/4 21/8 21/16 23/17 23/18 25/25 27/19 28/9 28/11 31/19 34/14
Dr. Maharaj's [1] 28/9
Dr. Rantleru [20] 3/8 4/2 4/16 5/12 5/24 6/20 7/2 7/8 7/10 7/20 14/12 14/18 15/8 15/22 17/22 18/4 33/16 33/20 33/22 34/10
Dr. Rantleru's [5] 4/4 4/10 5/2 5/16 31/20
drafted [1] 31/8
dramatic [1] 14/23
drill [1] 15/25
drills [1] 7/25
Drive [1] 1/18
during [6] 7/3 8/3 8/13 8/24 9/8 17/22
duties [1] 7/5

E

earlier [1] 7/11
easier [1] 3/25
easy [1] 10/23
ECF [3] 9/12 9/18 10/25
ECF-73 [1] 9/12
edits [1] 23/9
effect [1] 9/8
eight [1] 23/25
either [1] 12/7
electronic [4] 23/7 23/9 27/2 29/19
else [1] 30/10
email [1] 9/24
emails [2] 18/24 22/3
employee [1] 13/11
ended [2] 2/17 4/9
ends [1] 32/14
enough [1] 22/24
ensure [1] 24/16
entered [7] 4/19 6/10 23/16 25/5 25/10 25/13 25/16
entire [1] 9/11
entitled [1] 36/10
entries [5] 22/4 22/4 23/8 23/8 27/2
entry [1] 30/6
escalation [1] 16/2
especially [2] 24/23 30/8
ESQ [2] 1/12 1/17
et [2] 1/6 2/4
etc [1] 21/21
even [7] 18/16 20/9 21/14 24/4 24/25 28/19 30/4
evening [1] 8/14
events [1] 23/9
ever [1] 28/6
every [1] 16/1
everybody [1] 30/10
everything [3] 8/11 8/12 9/15
evidence [2] 18/15 29/14
exact [2] 25/6 25/14
exercise [1] 16/1
exist [24] 7/22 9/2 10/17 11/9 11/23 12/9 12/9 12/16 12/17 12/21 13/17 13/17 13/18 14/23 15/3 15/3 16/3 16/9 18/4 18/9 19/17 20/12 21/4 24/14
existed [4] 14/22 14/24 20/19 22/14
existence [3] 10/17 16/20 22/13
exists [2] 12/8 20/9
expected [1] 13/14
expense [2] 31/9 31/17
experience [1] 14/15
expert [10] 3/6 5/6 13/6 24/21 31/5 31/25 32/1 32/15 32/21 33/4
experts [4] 24/20 31/23 31/24 32/11
expiration [1] 5/18
explain [1] 31/13
exports [1] 23/10
express [1] 32/7
extend [4] 4/9 4/23 32/9 32/11
extended [1] 32/18
extension [1] 4/10
extent [1] 20/9

F

facility [4] 4/17 5/25 13/24 34/19
fact [6] 18/8 26/1 28/14 32/14 32/18 34/10
facts [2] 11/13 24/10
far [4] 8/25 11/21 21/8 24/18
Federal [1] 1/13
feel [2] 3/21 13/9
few [1] 7/1
file [4] 5/19 8/18 8/21 35/11
fill [1] 27/16
find [2] 28/16 29/15
fired [1] 13/10
first [4] 3/10 13/3 19/19 23/24
FL [2] 1/14 1/18
Flagler [1] 1/18
FLORIDA [2] 1/1 1/4
folks [1] 14/1
follow [1] 8/22
following [1] 2/2
foregoing [1] 36/8
forgery [1] 28/12
form [3] 25/22 25/25 26/24
formal [1] 33/18
forms [8] 23/12 26/1 26/6 27/11 27/12 27/23 28/13 29/16
frame [2] 7/5 30/24
free [1] 3/21
Friday [2] 3/11 8/14
fulfilled [2] 10/5 12/10
full [2] 9/4 30/15
fully [1] 9/13
further [1] 35/3
future [1] 10/10

G

gave [4] 13/16 28/13 34/16 34/17
Gayles [7] 2/4 31/22 32/2 32/4 32/22 33/8 33/11
general [1] 21/20
generally [1] 31/24
GENOESE [12] 1/17 2/10 2/12 2/18 14/3 16/4 18/1 19/18 24/5 30/18 32/6 35/15
get [11] 5/14 5/15 5/16 6/4 7/12 10/21 12/2 15/7 23/20 33/24 34/12
gets [1] 30/6
getting [2] 8/17 15/10
give [1] 34/23
given [8] 2/23 24/19 25/4 26/6 27/13 27/19 29/5 30/8
giving [1] 25/9
gmail.com [2] 1/23 36/13
go [10] 5/9 7/16 12/25 14/20 14/20 15/12 16/5 19/8 28/16 32/4
going [13] 3/12 10/7 11/3 13/8 18/11 22/10 23/2 25/8 30/3 30/12 31/15 32/7 33/7
Gomez [2] 31/5 33/9
Good [3] 2/9 2/12 2/20
got [1] 6/3
gotcha [2] 20/4 21/3
granted [1] 4/24
gray [1] 1/19
gray-robinson.com [1] 1/19
GRAYROBINSON [1] 1/17
great [2] 36/1 36/2
group [10] 2/25 19/2 19/6 19/8 20/8 20/10 20/11 20/20 21/15 22/14
groups [1] 21/10
guard [1] 33/4
guess [2] 2/15 11/14

H

had [29] 3/4 5/18 5/20 5/21 6/4 6/5 7/10 7/24 8/17 10/15 12/6 13/8 14/4 14/18 18/23 18/24 19/10 19/11 19/21 20/1 21/5 22/14 23/13 24/4 26/13 27/25 30/19 32/3 33/6
half [1] 24/2
hand [1] 26/5
handover [2] 3/2 17/19
handwritten [1] 30/25
happened [2] 6/25 32/1
happening [1] 13/2
happens [1] 14/15
has [31] 2/22 3/4 4/9 4/14 5/6 5/7 8/11 8/12 9/11 9/13 9/15 10/5 11/1 11/13 12/7 12/21 14/8 16/6 19/2 21/4 23/11 25/15 25/25 27/19 29/10 30/18 31/6 31/18 32/1 34/1 34/18
have [73]
having [3] 2/13 11/15 13/4
he [30] 7/4 7/4 14/7 14/10 14/12 14/13 14/14 14/17 14/18 14/22 19/1 20/7 20/8 21/8 23/18 23/19 24/1 24/21 26/9 26/11 26/12 28/6 29/8 29/8 29/10 29/11 31/6 31/8 32/3 34/18
He's [2] 6/1 11/14
hear [3] 2/17 2/18 8/9
heard [2] 32/6 34/24
hearing [19] 1/9 2/13 8/19 9/13 10/21 11/12 12/6 18/17 24/7 24/9 25/3 25/18 25/20 25/21 25/22 27/16 29/21 35/19 35/25
held [1] 2/2
help [1] 28/3
helpful [3] 27/19 30/3 30/8

H

her [2] 8/3 9/5
here [7] 2/15 11/13 11/21 12/20 13/8 16/15 34/7
hereby [1] 36/8
hey [1] 34/12
hiding [1] 20/4
Highway [1] 1/13
him [9] 24/1 28/6 28/7 29/9 29/12 29/12 31/7 31/12 31/16
his [21] 4/19 5/14 5/15 5/19 5/19 7/4 7/22 7/22 20/16 24/19 28/15 29/9 29/12 31/6 31/8 31/8 31/10 31/13 31/14 31/18 33/9
HOC [2] 15/1 22/6
HOFFMAN [16] 1/12 2/7 2/9 2/19 3/17 8/13 9/1 12/1 12/2 16/18 21/7 23/4 26/8 31/4 33/14 35/4
Hoffman's [1] 24/6
Hold [2] 17/6 27/5
Hollywood [1] 1/14
Honor [37]
Honor's [1] 9/12
HONORABLE [1] 1/10
horizon [1] 19/15
hospitals [1] 25/13
hour [2] 23/24 24/2
how [6] 14/14 27/19 27/23 30/2 30/3 30/8
however [2] 9/3 18/15

I

I'm [13] 9/25 11/17 12/1 12/4 12/13 14/6 17/7 25/21 26/25 27/18 31/23 33/10 34/8
I've [3] 8/13 10/16 35/21
iCare [1] 18/25
identify [1] 12/19
if [28] 2/13 3/18 3/19 3/21 3/25 4/21 10/15 11/10 12/8 12/8 13/10 15/8 16/10 18/15 20/11 20/18 22/21 22/24 24/25 25/9 27/4 28/19 29/2 29/18 30/5 33/1 34/6 35/10
impacted [1] 24/19
important [1] 22/24
impression [1] 28/7
in [85]
inbox [1] 30/5
incident [11] 5/24 5/25 11/16 14/5 20/2 20/6 20/13 20/15 21/5 21/18 34/17
included [1] 24/11
including [6] 7/20 22/3 22/5 23/8 27/2 31/18
independent [1] 13/12
indicate [2] 23/19 26/2
indicated [1] 25/24
indication [2] 29/24 30/1
infirmary [3] 23/24 26/11 29/11
information [5] 22/25 25/6 26/14 29/18 31/2
initial [3] 16/12 16/16 16/23
injection [1] 26/18
institutional [1] 22/15
instructed [1] 35/24
intimate [1] 14/18
into [13] 3/19 14/22 17/1 17/13 22/22 25/5 25/13 25/16 27/12 28/1 28/18 28/23 30/20
inventory [1] 26/17
involvement [1] 14/8
is [144]
isn't [2] 14/16 29/14
issue [11] 2/16 8/2 18/19 19/21 20/13 22/18 23/22 24/18 24/23 31/3 31/4
issues [8] 12/24 13/19 19/9 21/13 22/22 23/11 33/13 35/5
it [109]
it's [6] 4/8 11/12 23/22 25/10 25/13 33/5
item [1] 23/4
its [2] 10/5 22/13

J

jemancari [2] 1/23 36/13
Joanne [3] 1/22 36/12 36/12
job [2] 17/18 17/20
JUDGE [8] 1/10 18/20 31/22 32/2 32/4 32/22 33/7 33/11
July [1] 4/11
junior [1] 19/11
just [16] 4/1 6/13 6/22 6/23 7/10 16/10 17/1 17/13 22/16 25/12 27/16 28/1 30/15 32/7 32/11 32/24

K

keep [1] 30/16
kept [1] 32/21
know [11] 4/23 10/3 19/1 26/2 27/4 28/16 28/19 28/22 29/25 30/24 35/5
knowledge [3] 14/14 14/18 23/14
known [1] 22/14

L

land [2] 15/1 25/13
land-based [2] 15/1 25/13
last [9] 2/16 5/13 9/12 20/17 25/2 25/18 25/20 25/25 28/14
late [2] 6/24 16/21
late-produced [1] 16/21
later [2] 30/7 30/7
law [1] 29/9
learn [1] 24/3
learned [6] 2/25 3/2 16/20 31/8 31/11 31/18
learning [1] 21/15
leave [1] 7/15
leaves [1] 20/8
left [2] 7/2 7/4
let [2] 5/9 19/1
Let's [1] 7/16
letter [1] 3/11
like [15] 7/9 7/9 13/19 13/20 14/18 19/19 21/2 24/25 25/12 28/12 29/15 31/7 31/19 35/3 35/15
limited [4] 4/25 20/1 21/6 33/9
line [1] 24/3
list [1] 15/14
listed [1] 16/16
lists [1] 3/3
little [1] 8/16
local [7] 10/4 10/7 10/8 11/4 11/4 16/9 18/13
located [1] 16/7
location [1] 8/21
log [4] 18/25 22/4 26/16 26/16
logistics [1] 19/5
logs [2] 23/6 27/1
look [3] 11/3 13/21 30/20
looked [1] 24/13
looking [6] 3/15 13/13 15/15 19/16 24/3 24/17
lost [1] 12/4
lot [2] 27/3 35/5

M

made [4] 2/14 12/6 19/11 24/15
magical [1] 25/10
MAGISTRATE [1] 1/10
Maharaj [22] 3/6 5/5 5/11 5/13 5/21 5/23 13/6 14/12 19/1 20/4 20/14 21/4 21/8 21/16 23/17 23/18 25/25 27/19 28/9 28/11 31/19 34/14
Maharaj's [1] 28/9
mahoffman [1] 1/15
main [1] 34/8
make [14] 10/8 13/1 13/3 13/4 20/3 22/23 25/8 25/20 29/11 33/7 33/11 33/17 34/2 34/22
makes [2] 28/10 33/3
Mancari [3] 1/22 36/12 36/12
mandated [1] 7/23
materials [7] 3/21 5/20 7/20 7/21 8/6 14/25 31/8
matter [4] 8/7 11/15 32/24 36/10
matters [2] 3/15 5/18
may [6] 10/15 11/10 17/5 21/21 24/19 33/15
May 27 [1] 17/5
maybe [3] 30/7 33/23 34/1
me [8] 4/7 5/9 9/17 11/11 12/2 15/15 27/9 28/13
mean [5] 22/21 28/13 30/5 31/22 32/24
meant [2] 3/13 19/5
Med [3] 7/24 17/19 17/19
medical [33] 3/1 8/19 8/20 11/17 17/19 17/20 19/2 19/11 19/14 19/23 19/23 19/24 19/24 20/20 20/23 20/23 20/23 20/24 20/24 22/5 22/7 22/8 22/15 23/7 23/12 23/23 25/15 26/20 26/24 27/2 27/3 27/11 29/10
medicated [1] 26/12
medication [9] 24/19 24/24 25/4 25/9 26/13 26/15 26/23 27/13 34/17
meet [1] 33/1
member [1] 22/5
mentioned [1] 4/1
message [2] 22/3 22/3
messages [1] 22/4
metadata [5] 23/20 27/10 27/19 27/22 29/15
Miami [1] 1/4
MICHAEL [4] 1/3 1/12 2/7 2/8
Michaels [1] 12/2
microphone [1] 3/19
might [1] 16/10
minutes [2] 11/12 24/1
misrepresented [1] 18/17
missed [2] 13/19 21/13
missing [1] 30/2
misunderstanding [2] 8/22 24/8
misunderstandings [1] 10/9
modifications [2] 23/8 27/3
module [1] 15/23
modules [1] 15/2
monthly [2] 15/24 15/25
more [7] 6/16 10/21 22/24 24/3 25/8 31/5 31/21
morning [3] 2/9 2/12 2/20
most [1] 25/13
motion [12] 4/10 4/23 18/12 22/11 23/3 27/8 30/14 33/8 34/2 34/22 35/11 35/18
motions [1] 10/10

M

move [3] 33/19 33/19 33/20
moved [1] 17/9
moving [2] 18/6 26/22
Mr. [24] 2/9 2/19 3/17 8/13 9/1 11/24 12/1 12/2 16/18 19/10 21/7 23/4 23/24 24/4 24/6 24/19 24/20 26/8 26/11 28/4 28/15 31/4 33/14 35/4
Mr. Hoffman [13] 2/9 2/19 3/17 8/13 9/1 12/1 12/2 21/7 23/4 26/8 31/4 33/14 35/4
Mr. Hoffman's [1] 24/6
Mr. Smith [9] 11/24 16/18 23/24 24/4 24/19 24/20 26/11 28/4 28/15
Mr. Smith's [1] 19/10
Ms [2] 6/25 22/3
Ms. [10] 2/12 2/18 14/3 16/4 18/1 19/18 24/5 30/18 32/6 35/15
Ms. Genoese [10] 2/12 2/18 14/3 16/4 18/1 19/18 24/5 30/18 32/6 35/15
much [2] 10/16 31/18
my [23] 3/10 4/2 4/21 5/9 8/21 10/7 10/25 12/4 14/6 17/12 20/6 20/7 21/15 23/12 24/10 25/21 30/15 31/5 33/5 33/10 34/7 35/6 36/9

N

narrowed [1] 20/19
necessarily [1] 14/16
need [10] 3/22 7/12 8/23 9/10 13/1 16/23 19/13 22/23 28/15 29/14
needs [4] 19/4 19/14 25/2 26/15
neither [1] 5/11
never [2] 16/16 22/16
new [2] 31/11 31/16
next [4] 18/21 23/4 31/3 31/4
no [35] 1/2 4/5 4/20 5/4 6/4 6/24 7/1 7/5 9/7 9/8 9/18 10/9 10/25 11/21 14/8 14/13 16/19 17/15 18/21 19/22 20/5 20/14 21/3 21/9 22/2 23/5 24/23 25/10 29/10 30/11 30/14 30/22 31/1 33/3 35/17
none [7] 9/11 16/12 19/20 20/8 20/15 21/4 24/14
normally [1] 32/14
North [1] 1/18
not [72]
note [1] 29/23
notes [1] 25/16
nothing [3] 11/13 14/4 25/8
notice [4] 10/6 10/24 18/13 27/7
notified [1] 19/10
November [1] 22/9
November 30 [1] 22/9
now [13] 11/3 11/4 12/7 18/5 19/17 21/20 25/25 28/9 29/25 30/24 33/4 34/1 35/9
nurse [5] 8/3 9/2 9/5 13/8 26/16
nurses [6] 3/3 8/8 12/25 13/14 14/20 15/4
nursing [1] 15/18

O

object [1] 13/10
objected [1] 6/14
obligation [2] 10/5 12/10
obtainable [1] 29/19
obviously [1] 34/7
occur [1] 12/24
October [9] 1/5 2/17 2/22 7/21 16/21 16/22 22/9 23/10 36/12
October 18 [1] 22/9
October 18th [1] 23/10
October 1st [1] 16/21
October 9th [4] 2/17 2/22 7/21 16/22
off [2] 20/8 33/3
oh [2] 25/11 33/4
OK [39]
on [47]
once [4] 5/18 10/5 19/14 20/8
one [18] 3/13 4/7 5/5 5/7 5/7 6/16 10/20 12/23 13/3 13/4 13/23 15/4 19/9 23/11 27/14 28/2 34/9 34/11
one's [1] 33/3
only [5] 16/20 18/25 24/9 29/18 35/17
open [1] 8/5
opinion [2] 31/13 33/5
opinions [2] 31/11 31/16
opportunity [4] 33/6 33/18 34/3 34/23
or [41]
order [15] 4/19 5/9 6/10 7/11 8/12 9/12 10/25 18/12 24/12 26/20 32/8 32/9 32/13 33/11 35/19
ordered [3] 2/22 15/5 15/22
orientation [1] 17/18
other [5] 3/5 9/25 10/15 21/16 33/13
our [7] 4/10 9/7 9/11 11/22 24/11 25/2 30/25
out [12] 19/20 24/11 24/25 26/6 26/15 26/17 26/23 27/13 27/21 28/11 29/15 33/20
outset [1] 17/25
outside [1] 33/22
over [2] 4/17 7/7
overnight [1] 3/12
oversight [1] 32/25
own [2] 24/20 24/21

P

P.A [2] 1/13 1/17
p.m [5] 18/12 25/9 25/10 25/12 25/12
page [4] 7/18 17/1 18/7 28/21
pages [2] 1/7 28/20
Palm [1] 1/18
paperless [1] 7/11
Parejo [1] 6/5
part [6] 4/24 4/25 5/4 13/18 14/6 15/1
particular [5] 13/24 15/14 16/1 16/24 21/18
parties [2] 10/8 34/11
parts [1] 9/14
party [1] 10/5
passed [1] 4/15
patient [2] 21/11 21/11
patients [2] 19/4 21/11
Pause [3] 5/10 17/3 22/1
perhaps [1] 32/25
period [5] 7/2 8/24 9/15 15/22 34/9
person [5] 13/3 13/22 13/23 14/9 34/18
personnel [4] 5/19 8/18 8/20 20/25
physically [1] 24/16
physician [4] 5/24 9/6 11/15 22/6
physicians [1] 13/23
picked [1] 3/18
place [1] 2/14
placed [4] 28/23 29/16 29/16 29/23
plaintiff [21] 1/4 1/12 2/6 2/8 2/17 2/23 9/10 9/23 15/21 16/8 18/6 18/15 20/1 20/5 20/13 20/15 21/5 21/9 22/7 26/4 26/7
plaintiff's [15] 4/12 4/13 11/11 11/16 17/4 20/2 21/5 22/7 22/7 22/8 23/7 24/20 27/1 31/9 35/22
please [1] 2/5
podium [1] 3/17
point [6] 13/7 19/20 24/7 24/25 27/21 34/9
policies [3] 9/8 14/19 14/21
policy [2] 7/24 19/13
poorly [1] 21/3
poorly-worded [1] 21/3
position [8] 4/8 4/22 7/22 8/11 9/7 9/11 18/7 22/6
posted [1] 30/6
potential [1] 21/12
practical [1] 32/24
preceding [1] 17/22
prejudice [1] 18/19
prepared [1] 34/3
present [4] 9/3 11/18 17/23 23/10
previously [1] 4/13
printed [13] 23/18 23/25 24/11 25/6 25/15 26/1 26/2 26/6 27/21 28/11 29/3 29/4 30/1
printed-out [1] 24/11
prior [5] 3/4 3/13 8/19 21/15 22/13
privy [1] 11/19
probably [2] 3/25 31/21
probe [1] 33/6
procedures [3] 14/19 14/21 19/13
proceedings [1] 2/2
produce [7] 10/5 12/10 12/15 15/22 18/12 22/19 27/10
produced [15] 8/12 8/15 8/23 9/15 9/20 11/2 11/6 11/8 11/9 12/8 16/7 16/21 18/3 18/8 18/18
producing [1] 11/23
production [15] 2/21 11/16 12/5 16/13 16/17 16/25 17/5 18/3 19/21 21/24 22/11 23/3 26/21 30/13 30/13
professional [1] 17/21
Promethazin [1] 26/17
proportional [2] 25/1 27/24
propose [1] 35/23
proposing [1] 6/23
protective [1] 35/18
protocol [3] 8/3 8/4 15/12
protocols [3] 8/25 9/4 9/7
provide [1] 10/6
provided [7] 4/11 7/7 7/19 9/22 13/5 13/6 22/17
provides [1] 10/4
pull [1] 15/5
purported [1] 28/14
purpose [1] 26/18
pursuant [2] 16/9 24/12
put [2] 24/1 30/6
putting [1] 28/5

Q

question [2] 16/23 34/18
questions [1] 15/10

R

radio [1] 19/24
raise [1] 35/4
Rantleru [20] 3/8 4/2 4/16 5/12 5/24 6/20 7/2 7/8 7/10 7/20 14/12 14/18 15/8 15/22 17/22 18/4 33/16 33/20 33/22 34/10
Rantleru's [5] 4/4 4/10 5/2 5/16 31/20

## R

reach [1] 6/21
read [4] 17/1 17/13 20/22 33/4
reading [1] 16/11
really [1] 11/17
reason [2] 8/17 32/3
reasonably [1] 16/7
reasons [1] 27/14
reassert [1] 4/14
recall [1] 29/9
recalled [1] 21/8
receive [4] 10/3 13/13 17/24 27/15
received [4] 2/21 5/21 7/20 24/1
receiving [2] 5/19 28/5
recent [2] 2/25 16/21
recently [1] 5/17
recognition [1] 16/2
recommendation [1] 19/12
record [10] 2/6 3/19 11/22 12/20 16/1 17/1 17/13 23/8 27/2 30/15
recording [2] 1/9 36/10
recordings [1] 19/22
records [16] 2/24 3/10 7/19 15/15 15/16 15/22 15/23 15/25 16/1 17/17 17/21 18/3 23/7 26/20 27/2 27/3
recreate [1] 28/1
referred [1] 6/1
refocused [1] 3/14
refused [1] 6/23
regarding [7] 7/25 13/14 17/25 20/12 21/9 21/18 29/19
regularly [1] 15/1
related [5] 3/15 8/6 15/17 21/4 23/21
relates [4] 3/1 10/25 15/18 19/3
relevant [4] 8/7 27/24 29/1 30/3
relief [1] 35/7
remaining [4] 2/16 5/8 6/4 35/18
reopen [1] 33/8
rep [1] 5/22
repeatedly [1] 9/9
report [6] 31/6 31/8 31/9 31/15 31/18 33/9
Reporter [2] 1/22 36/13
reports [1] 24/22
represent [3] 24/9 24/17 35/21
representation [1] 9/19
representations [1] 35/9
represented [5] 8/13 8/25 11/1 14/7 23/14
request [30] 9/9 10/13 10/13 11/16 12/5 16/6 16/12 16/16 16/25 17/4 18/21 19/21 21/3 21/6 21/24 22/11 23/3 23/5 25/17 26/21 30/13 30/13 32/8 32/10 33/7 33/11 33/18 34/4 35/1 35/6
requested [9] 3/10 5/17 11/6 16/12 16/13 16/24 17/2 22/16 22/19
requests [2] 9/1 18/6
required [1] 18/13
requirements [1] 19/12
rescheduled [1] 4/15
rescheduling [1] 35/24
respect [10] 6/10 7/6 9/18 10/10 16/6 18/14 18/22 23/2 27/9 33/8
respond [2] 33/18 34/3
responded [2] 19/21 20/2
responding [3] 11/3 11/5 17/10
response [5] 12/12 22/11 24/12 30/14 30/18
responsible [1] 8/8
responsive [14] 9/19 10/6 11/1 12/10 16/7 17/14 19/20 20/9 20/16 20/18 20/21 21/21 21/22 21/25
rest [1] 36/2
reverse [1] 32/2
review [1] 10/8
revised [1] 30/14
revisit [1] 35/10
RFP [7] 10/25 17/2 17/9 18/5 18/14 27/9 30/14
RFP-129 [1] 27/9
RFP-154 [5] 10/25 17/2 17/9 18/5 18/14
right [15] 2/14 2/14 2/15 3/23 7/16 10/12 10/23 15/20 18/11 28/10 30/12 31/3 33/13 34/22 35/8
righty [3] 6/9 35/14 36/1
risk [1] 28/5
robinson.com [1] 1/19
role [3] 7/22 8/8 15/18
room [1] 30/10
RPR [2] 1/22 36/12
rule [5] 10/4 10/8 11/4 11/4 16/9
ruled [5] 5/18 7/10 8/19 33/23 33/23
rules [2] 10/7 18/13
ruling [1] 25/21
rulings [1] 12/6
run [1] 22/22

## S

said [14] 6/4 6/23 8/23 11/20 12/7 12/9 12/16 12/21 13/9 14/4 21/2 25/2 29/6 34/11
same [3] 14/20 25/6 25/14
sanctions [1] 35/19
Saturday [1] 16/13
say [2] 16/14 19/13
saying [13] 9/24 11/8 11/9 12/8 12/12 12/15 12/16 13/15 15/11 15/20 21/20 31/12 33/4
says [4] 11/18 20/23 20/24 21/17
scan [1] 30/3
scanned [8] 23/21 27/12 27/25 28/17 28/17 28/23 28/23 29/16
scenarios [1] 15/25
scheduled [7] 4/4 4/12 5/3 5/7 6/6 6/16 34/10
schedules [1] 19/3
scheduling [3] 21/12 32/9 32/13
screening [2] 13/10 15/19
SeaCare [3] 23/6 27/1 27/12
search [6] 11/2 16/8 24/15 27/22 29/15 30/25
searched [1] 12/22
Second [1] 13/4
Section [3] 15/14 15/20 17/1
security [4] 19/24 19/24 20/23 20/24
sedative [3] 24/1 29/5 29/8
see [6] 3/18 3/24 13/21 20/11 20/24 24/16
seek [2] 7/9 22/24
seeking [4] 7/8 8/6 17/24 27/8
seems [1] 2/14
send [1] 29/12
senior [12] 3/9 6/1 10/15 10/18 12/23 14/10 14/17 15/9 19/10 19/13 22/6 31/20
sense [1] 33/3
sent [3] 3/11 3/14 9/24
separate [4] 8/21 9/14 11/12 28/21
set [3] 6/24 35/19 35/23
setting [1] 6/14
seven [1] 15/21
several [2] 9/1 9/1
SHAW [1] 1/10
SHAW-WILDER [1] 1/10
she [10] 8/4 8/5 9/4 9/5 11/3 13/8 13/9 13/9 13/10 13/10
She's [1] 11/8
sheet [3] 15/24 24/11 25/7
ship [12] 7/4 9/5 9/5 10/15 10/18 10/22 11/15 14/11 14/15 14/17 14/20 22/6
ship's [2] 19/8 22/6
shipboard [1] 18/22
short [1] 7/3
should [6] 10/6 13/17 26/16 32/4 33/24 34/22
show [3] 24/13 26/1 30/23
shows [1] 27/20
sign [5] 24/4 24/20 28/8 29/7 29/10
signature [4] 23/9 23/16 28/20 30/24
signatures [1] 29/22
signed [23] 23/12 23/19 24/8 25/4 25/22 25/24 26/3 26/3 26/7 26/9 26/12 26/15 26/23 26/24 27/12 27/13 27/21 28/14 28/15 28/17 28/23 29/3 29/25
signing [3] 24/21 28/6 29/9
simply [2] 25/5 25/12
since [7] 2/16 10/18 31/6 31/8 31/11 31/18 34/6
SINGER [1] 1/13
sit [1] 31/13
sits [1] 30/5
situation [3] 12/25 27/18 31/22
situations [1] 32/25
Slack [1] 22/3
sleep [1] 24/2
SMITH [12] 1/3 2/3 2/8 11/24 16/18 23/24 24/4 24/19 24/20 26/11 28/4 28/15
Smith's [1] 19/10
so [78]
some [7] 7/20 8/17 8/19 18/15 20/3 27/21 27/23
somehow [2] 11/22 25/11
someone [5] 12/16 13/16 14/4 28/14 30/6
something [4] 13/20 22/19 34/1 35/11
sorry [5] 10/14 12/1 12/4 16/5 17/7
sort [3] 14/25 20/4 24/13
source [1] 29/19
South [1] 1/13
SOUTHERN [1] 1/1
speak [1] 26/22
speaking [1] 3/19
specially [1] 35/23
specific [10] 8/23 13/7 14/16 15/2 16/11 16/15 19/3 21/11 23/6 28/4
specifically [4] 10/22 19/21 27/17 32/10
specified [1] 7/23
staff [6] 11/17 17/19 17/20 20/20 22/5 26/4
staff's [1] 15/18
stamp [3] 23/13 25/23 27/20
stamps [6] 25/16 26/1 26/2 29/23 29/24 29/25
standard [1] 3/7
starting [1] 2/6
starts [2] 7/18 10/13
state [2] 8/4 16/3
stated [2] 18/23 29/10
statement [1] 16/14
states [3] 1/1 1/10 23/6
staying [1] 29/11

S

step [2] 3/25 3/25
still [3] 5/7 20/12 31/19
stroke [17] 8/1 8/2 8/7 8/25 9/7 9/8 13/5 13/9 13/19 15/4 15/12 15/15 15/17 15/19 16/2 21/13 24/22
subject [1] 20/6
submitting [1] 18/16
subsection [1] 10/24
such [2] 16/1 31/2
suggest [2] 11/5 13/16
summaries [1] 19/23
Sunday [1] 16/13
supervisor [2] 4/17 5/25
supplement [7] 3/14 3/24 7/6 9/17 31/7 31/14 33/9
supplemental [2] 16/14 18/2
supposed [1] 7/19
sure [14] 2/13 3/18 9/25 10/8 11/18 11/20 13/1 13/3 13/4 25/20 29/11 31/23 32/2 32/3
surprised [1] 33/3
sworn [1] 15/7
system [9] 23/6 25/6 25/13 25/17 27/1 28/1 28/18 28/24 29/17

T

tablet [4] 23/15 24/8 25/23 25/23
take [10] 3/25 10/12 22/21 29/12 31/17 31/19 33/19 33/21 33/24 34/13
taken [5] 4/20 5/6 5/7 26/17 31/7
talking [1] 34/8
team [5] 3/1 3/4 19/2 19/4 19/6
teams [2] 22/3 22/15
telephone [1] 19/25
telephones [1] 19/9
tell [3] 8/16 15/15 16/11
telling [1] 31/17
ten [1] 11/11
terms [1] 17/24
testified [13] 9/2 10/22 12/16 12/24 13/22 20/4 20/14 21/4 23/17 23/18 25/25 26/18 27/20
testify [1] 21/8
testifying [1] 28/11
testimony [16] 11/5 11/11 11/14 11/18 11/21 11/21 12/13 12/14 13/5 13/16 15/8 20/7 20/16 24/22 28/10 30/9
text [2] 22/3 28/21
than [1] 22/18
Thank [6] 3/23 18/20 33/12 34/5 35/13 36/3
that [284]
that's [3] 9/9 10/18 21/18
their [11] 12/10 14/14 14/15 15/5 15/24 15/25 16/20 16/20 19/3 23/14 24/21
them [9] 9/10 9/10 10/18 11/23 12/22 16/12 26/7 26/9 28/13
then [17] 2/18 3/12 4/14 6/5 13/22 18/18 22/22 27/21 29/23 31/9 31/25 31/25 32/15 32/18 33/5 34/11 34/12
there [53]
there's [5] 2/24 7/24 15/15 21/20 35/5
Thereupon [1] 1/24
these [22] 6/4 6/24 7/13 8/17 8/19 8/23 10/10 11/22 13/16 15/7 16/11 16/12 16/13 16/24 16/25 18/17 21/13 22/22 23/18 23/23 31/1 32/25
they [44]
they're [3] 11/8 11/9 12/16
They've [1] 6/22
things [6] 5/20 10/16 12/23 15/7 21/14 28/2
think [10] 4/24 5/6 10/13 22/22 23/25 25/1 31/21 32/4 32/11 33/17
third [1] 17/4
this [53]
those [16] 3/16 6/5 7/3 12/19 13/12 14/1 15/10 15/22 15/23 16/3 17/2 18/3 19/16 23/21 27/23 31/10
thought [4] 4/19 7/10 12/4 29/6
three [1] 17/22
threshold [1] 16/23
through [7] 3/12 9/1 15/12 17/23 19/8 22/9 23/10
throughout [2] 23/22 34/9
ticketing [1] 22/4
time [31] 2/14 4/14 5/2 7/3 7/5 7/8 9/11 22/25 23/13 23/19 24/3 25/5 25/15 25/23 25/24 26/1 26/2 26/8 26/19 27/20 28/14 28/20 29/2 29/3 29/4 29/21 29/23 29/24 29/24 29/25 30/24
timeline [2] 24/14 28/2
times [1] 9/1
timing [1] 26/11
today [2] 7/17 18/13
together [1] 26/16
told [11] 7/22 10/2 10/17 14/23 15/3 15/3 19/1 19/6 19/7 19/17 22/13
tomorrow [1] 6/17
too [1] 6/24
took [4] 3/5 3/6 13/15 14/3
topic [1] 32/6
topics [2] 15/24 15/25
touched [1] 26/13
tracings [1] 25/14
track [2] 10/24 26/8
tracking [1] 24/14
trail [7] 25/1 25/3 25/5 25/11 25/17 27/23 30/17
trails [3] 23/7 24/18 27/1
train [1] 12/4
training [24] 2/24 3/2 3/3 3/10 5/20 7/19 7/21 7/23 7/25 8/6 8/20 13/19 14/15 14/17 14/25 15/16 15/17 17/17 17/18 17/20 17/25 19/3 21/12 21/21
trainings [2] 13/13 15/2
TRANSCRIBED [2] 1/9 1/22
transcript [1] 27/15
transcription [1] 36/9
transcripts [4] 10/20 19/22 35/8 35/10
transpired [1] 34/1
treating [3] 4/16 5/23 13/23
treatment [1] 22/8
triage [3] 12/25 15/18 16/2
trial [1] 35/23
tried [1] 7/14
troubleshoot [1] 13/21
troubling [1] 13/11
try [2] 25/8 28/16
trying [9] 11/14 19/9 23/20 26/8 26/10 27/18 28/1 29/13 29/22
two [3] 5/6 27/10 30/7
type [4] 7/25 26/15 27/23 28/10

U

under [4] 13/12 14/24 17/18 32/13
understand [10] 7/14 9/10 19/9 25/17 25/20 26/10 27/18 30/11 31/15 34/6
understanding [11] 4/2 4/21 9/4 14/6 17/12 20/6 20/7 24/10 25/22 30/16 34/7
understood [4] 10/11 12/3 28/1 24/21
unfair [1] 17/8
unfortunately [1] 9/14
UNITED [2] 1/1 1/10
unrelated [1] 11/15
until [2] 2/22 7/21
up [7] 2/21 3/16 3/18 7/20 8/22 9/9 15/5
uploaded [1] 27/12
upon [4] 5/19 6/19 18/16 26/13
us [6] 6/24 10/23 19/1 22/17 28/3 30/19
use [2] 3/21 11/14
user [1] 23/8

V

verified [1] 10/17
versus [2] 14/22 26/19
very [4] 8/7 13/7 23/25 28/4
vessel [1] 19/25
vessel's [1] 22/5
view [1] 33/21
voicemails [1] 19/22
voyage [4] 9/9 11/17 14/8 17/22

W

wait [2] 27/5 27/15
waiting [1] 10/20
want [19] 7/16 9/10 15/12 20/3 22/23 24/7 25/20 27/4 27/22 28/16 28/19 28/22 29/15 31/12 31/14 31/16 32/3 32/6 33/15
wanted [1] 27/14
was [106]
wasn't [7] 2/13 6/23 8/5 11/18 20/6 21/14 22/19
way [6] 25/10 29/10 30/15 32/3 32/12 32/14
we [75]
we're [4] 15/3 19/9 26/10 31/17
we've [3] 7/20 15/7 17/24
week [5] 5/13 20/17 25/25 30/6 35/23
weekend [1] 7/7
weeks [1] 30/7
well [23] 5/22 6/13 7/12 7/15 7/18 8/8 12/13 13/6 14/16 14/24 15/18 20/10 20/22 22/18 26/21 26/25 27/3 28/6 29/2 29/4 29/6 31/12 33/17
went [2] 13/21 14/22
were [67]
West [1] 1/18
what [41]
What's [12] 2/24 19/2 19/6 19/8 20/5 20/10 20/11 20/20 21/9 21/10 21/15 22/14
whatever [4] 14/20 23/20 31/16 34/17
whatsoever [1] 14/8
when [45]
where [3] 11/20 12/5 32/14
wherever [1] 14/19
whether [5] 8/2 24/4 25/3 29/22 34/18
which [20] 2/25 3/14 5/5 5/7 10/25 13/11 15/1 15/14 16/3 19/17 19/20 21/5 24/11 25/1 25/6 25/15 26/18 30/22 31/1 35/19
who [15] 3/8 8/8 13/16 13/22 14/8 14/9 15/8 15/9 26/7 29/9 30/10 34/16 34/16 34/17 34/19
whole [1] 34/9
whom [1] 27/11
why [9] 3/13 9/10 10/3 20/18 20/20 27/22 31/23 32/2 32/11
WILDER [1] 1/10

W

will [13] 2/17 2/18 7/15 8/9 8/16 16/9 34/5 34/19 34/23 35/10 35/11 35/21 35/23
withdraw [1] 4/13
withheld [1] 35/9
within [8] 6/11 6/14 7/5 9/14 15/21 23/24 24/2 33/24
without [1] 18/18
witness [6] 3/7 13/6 28/7 28/15 30/9 31/5
witnesses [1] 34/8
worded [1] 21/3
work [1] 14/12
working [1] 17/10
works [1] 32/14
worries [1] 16/19
would [43]
wouldn't [3] 20/18 20/20 21/21
writing [2] 9/23 16/3
written [1] 22/2
wrong [1] 13/21

Y

years [1] 17/22
yes [33] 2/20 5/1 5/15 6/1 6/7 6/13 8/10 9/21 11/10 11/25 12/18 13/18 15/17 16/5 17/7 18/2 18/10 18/23 19/19 24/6 25/19 26/5 26/10 27/6 27/16 28/25 29/20 30/21 30/25 32/22 34/15 34/20 34/25
yesterday [2] 7/7 27/15
yet [1] 27/16
you [98]
you'd [2] 35/3 35/15
you're [9] 6/24 7/8 12/15 13/15 15/11 15/20 21/20 27/8 27/9
your [59]