**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24611-GAYLES/SHAW-WILDER**

MICHAEL SMITH,

Plaintiff,

v.

CARNIVAL CORPORATION,
NIKHIL MAHARAJ, M.D., and
LETLHOGILE RANTLERU, M.D.,

Defendants.
____________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT ON BREACH OF THE SHIPBOARD MEDICAL STANDARD OF CARE [ECF NO. 115]**

Plaintiff, Michael Smith, replies in support of his Motion for Partial Summary Judgment, ECF No. 115 (the "Motion"), and in response to Carnival's opposition, ECF No. 138 (the "Response"), and Carnival's response to Plaintiff's Statement of Material Facts, ECF No. 139 (the "SMF Response"). Citations to "SMF ¶ __" are to Plaintiff's Statement of Undisputed Material Facts, ECF No. 116. Depositions are cited by transcript page and line; for the deposition exhibits to the SMF, the ECF page is the transcript page plus one.

## INTRODUCTION

Carnival's Response rests on one legal proposition and one piece of evidence. The proposition is that breach of the medical standard of care must be proved by expert testimony. The evidence is a single answer by Dr. Parejo that the care was "an excellent level of care" and that the doctors did what "they say, that they meet and they exceeded the standards of the American College of Emergency Physicians." ECF No. 138 at 5–6. The proposition is satisfied by a record

the SMF Response leaves undisputed: Plaintiff's expert's opinion that the care "fell below the applicable standard of care," SMF ¶ 64, is not addressed at all, and the concessions of Carnival's own three experts, SMF ¶¶ 69–73, are either unaddressed or, as to ¶ 71, "disputed" only because two passages appear in one paragraph. The evidence is the kind of generalized expert conclusion that the Eleventh Circuit and the Supreme Court hold cannot create a genuine dispute, and it comes from a witness who, Carnival told this Court on the same day, gives no opinion on whether "the shipboard medical staff followed Carnival's procedures," is "not proffered as an expert to explain the documented medical records," and offers no opinion "as to whether 'Mr. Smith could stand or walk.'" ECF No. 141 at 7, 10. The five breaches identified in the Motion turn on exactly those three things.

## I. The SMF Response leaves the material facts uncontroverted.

Local Rule 56.1 requires an opponent's statement to "clearly challenge any purportedly material fact asserted by the movant," with "each fact supported by specific, pinpoint references to particular parts of record material," and provides that when a fact is disputed "the evidentiary citations supporting the opponent's position must be limited to evidence specific to that particular dispute." S.D. Fla. L.R. 56.1(a)(2), (b)(1)(B), (b)(2)(C). Facts not controverted "may be deemed admitted" if "supported by properly cited record evidence." L.R. 56.1(c). Rule 56 is to the same effect. Fed. R. Civ. P. 56(c)(1)(A), (e)(2). Compliance with a local rule of this kind is "the only permissible way for [the non-movant] to establish a genuine issue of material fact at that stage," and when it is not followed "the court has before it the functional analog of an unopposed motion for summary judgment." *Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008).

The SMF has seventy-nine paragraphs. The SMF Response addresses thirty-four of them. ECF No. 139. Forty-five are not mentioned, including Carnival's MED-3002 definition of

"emergent," its MED-3102 admission and discharge rules, and the MED-3104-A2 rule that "the higher category should be selected," SMF ¶¶ 10, 13–15; Dr. Maharaj's testimony that "[a] suspected acute stroke is a medical emergency," that the senior doctor should attend a suspected stroke, and that a patient need not show every BE-FAST sign, SMF ¶¶ 21–22, 25; the absence of any coordination test, neurological diagnosis, or change from the "urgent" triage category, SMF ¶¶ 36, 46–48; the entry that Mr. Smith was "too lethargic to stand," SMF ¶ 44; the 23:30 wheelchair discharge and the ten-hour gap in the chart, SMF ¶¶ 50–51, 53; the "Cat 1" disposition entered alongside "Requires hospitalization most likely," SMF ¶¶ 54–56; the absence of any entry by, or documented notification of, the Senior Doctor, SMF ¶¶ 57–58; Carnival's Rule 36 admissions and the uncompleted medevac check sheet, SMF ¶¶ 59–61; Dr. Gomez's opinion that the care fell below the standard, SMF ¶¶ 64, 66; Dr. Razack's testimony that coordination testing takes "10 seconds," SMF ¶ 68; the concessions of Drs. Merkler and Barredo, SMF ¶¶ 69–70; Dr. Parejo's testimony that time last known well is "[a]bsolutely" a factor at sea and that a patient with "clear signs compatible with a stroke" and no other explanation "needs a CT scan," SMF ¶¶ 72–73; and every paragraph concerning the against-medical-advice forms and the treatment and discharge that followed them, SMF ¶¶ 76–79.

Of the thirty-four paragraphs the SMF Response does address, twenty-five are marked "disputed" with no record citation of any kind. ECF No. 139 ¶¶ 2, 11–12, 16–19, 26, 28, 31–35, 37–39, 42–43, 45, 49, 63, 67, 74–75. The stated ground for most is "summarization," but the paragraphs so disputed quote their sources verbatim: the procedures, SMF ¶¶ 11–12, 16–19; the chart, SMF ¶¶ 31–34, 37–39, 43, 45; and Dr. Parejo's report and testimony, SMF ¶¶ 74–75. A response that calls a verbatim quotation a "summarization" and identifies no contrary record material does not controvert anything. L.R. 56.1(b)(2)(C). Paragraph 63 is "disputed" because it

quotes Carnival's own Statement of Material Facts, ECF No. 110 ¶ 18; Carnival does not say that statement is wrong. Paragraph 65 is "disputed" with a bare citation to the whole Gomez transcript, "*See* ECF No. 110-10," which is not a pinpoint reference. L.R. 56.1(b)(1)(B).

One uncited assertion deserves a direct answer. The SMF Response says a last-known-well time "is documented in the Medical Chart describing when Mr. Smith's symptoms first arose." ECF No. 139 ¶ 33. The chart entry is the 19:23 history of present illness, headed "VOMITING, DIARRHEA, LETHARGY," which records "Onset 2 days ago." ECF No. 116-1 at 16 (GR000019). Dr. Maharaj testified that the "onset two days ago" referred to "those three presenting complaints: vomiting, diarrhea, and lethargy," and when asked whether he had asked Mr. Smith "when he was last able to walk normally," answered only: "He was walking." Maharaj Dep. 128:11–18, ECF No. 116-2 at 129. Carnival's own neurologist defines last known well as "when the person first develops a neurological deficit," such as "weakness of their hand." Barredo Dep. 96:12–22, ECF No. 119-5 at 97. The onset of vomiting is not a last-known-well time, and no witness has said it is.

The nine responses that do cite the record do not contradict the facts they are offered against. Nurse Dube's testimony that she is "not sure" whether a stroke can be diagnosed aboard and that diagnosis is "the doctor's discretion," ECF No. 139 ¶¶ 23–24, is not inconsistent with her testimony that a suspected stroke is "[e]mergent," not urgent, Dube Dep. 79:2–11, ECF No. 116-3 at 80, and that a stroke "would require the senior doctor to attend the clinic," *id.* at 33:20–24, ECF No. 116-3 at 34. Her lack of an "independent recollection" of Mr. Smith, ECF No. 139 ¶ 30, does not dispute what she charted or what the chart omits. And the Maharaj testimony quoted against SMF ¶¶ 40–41 is the testimony those paragraphs quote: "That would be unreasonable to assume. And this is not a full neurological exam." Maharaj Dep. 134:13–14, ECF No. 116-2 at

135. The result is that every fact underlying the five breaches, and every fact listed in the Motion's Rule 56(g) request, is either unaddressed or "disputed" without a citation. Each is supported by a pinpoint citation to the chart, the procedures, Carnival's admissions, or sworn testimony. They should be treated as established. L.R. 56.1(c); Fed. R. Civ. P. 56(e)(2).

**II. The expert-testimony requirement is satisfied, and Carnival's own experts supply it.**

The Response argues that "[n]one of these categories constitute expert opinions," referring to the procedures, the staff testimony, and the chart. ECF No. 138 at 4. The next sentence of the Motion states that "Plaintiff's shipboard-medicine expert, Victor Gomez, M.D., confirms under oath that the care fell below the standard of care, SMF ¶¶ 64–67, and Carnival's own experts confirm the standard and the omissions, SMF ¶¶ 69–73." ECF No. 115 at 7. The Response never mentions Dr. Gomez, Dr. Razack, Dr. Merkler, or Dr. Barredo, and the SMF Response leaves SMF ¶¶ 64, 66, 68, 69, 70, 72, and 73 untouched. Carnival's authorities, as Carnival describes them, hold that a plaintiff who "does not establish what standard of care existed" cannot show breach. ECF No. 138 at 3. Plaintiff established the standard through a physician specializing in shipboard medicine, a neuroradiologist, Carnival's two neurologists, and Carnival's shipboard-medicine expert, and Carnival has not disputed what any of them said.

Dr. Parejo's testimony is the clearest example, and the SMF Response quotes it in full. ECF No. 139 ¶ 71. Asked about BE-FAST, he testified that it is "a very, very simplified form of a neurological exam" for "paramedics, layman's people," and then: "that's not what a doctor will do as a neurological exam, really. It's -- I mean, you could do it, but I would expect that as a physician to do more things than -- than -- than was there." Parejo Dep. 54:21–55:7, ECF No. 116-10 at 55–56. On the Cincinnati scale: "As a doctor, I will do a normal neurological exam, which is comprehensive. . . . You do a complete neurological exam." *Id.* at 131:19–132:6, ECF No. 116-10

at 132–33. Carnival's complaint is that the SMF placed these two passages in one paragraph. ECF No. 139 ¶ 71. Together or apart, they state the standard: a comprehensive neurological examination. Carnival's physician testified that what he charted "is not a full neurological exam," Maharaj Dep. 134:13–14, and could not find a finger-to-nose or heel-to-shin test anywhere in it, *id.* at 135:2–19, ECF No. 116-2 at 136.

Carnival's neurologist did not find an NIH Stroke Scale conducted aboard the ship and did not believe any shipboard entry documenting finger-to-nose, heel-to-shin, rapid alternating movements, or truncal ataxia. SMF ¶ 69 (unaddressed). Its examining neurologist agreed that dizziness with vomiting is "a recognized way that a stroke can get missed" and that a screen limited to face, arm, and speech can miss a cerebellar stroke. SMF ¶ 70 (unaddressed). That is expert testimony on the standard and on the omission, and all of it is Carnival's.

The Response's second argument is that Plaintiff seeks to "create a legal standard of care through internal policies." ECF No. 138 at 4. The Motion does not ask the Court to treat Carnival's procedures as the standard by themselves. It relies on the procedures together with the testimony of the physician and nurse bound by them, SMF ¶¶ 20–26, and of five experts. The authority Carnival quotes says that internal policies are not "automatically considered prima facie evidence of negligence," ECF No. 138 at 4–5; it does not say they are not evidence of what reasonable care under the circumstances requires.

Under maritime law, a cruise line owes its passengers "ordinary reasonable care under the circumstances," *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989), a standard under which "cruise lines will not always be held to the same standard of care that would guide treatment onshore," because "standards of care typically vary among differently situated healthcare providers." *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir.

2014). The circumstances of a Carnival medical center are defined in large part by the written procedures Carnival requires its physicians to follow and by what its physicians say those procedures require. Carnival cites Florida's medical-malpractice statute, Fla. Stat. § 766.102, ECF No. 138 at 3; *Franza* cites that statute only as a "cf." comparison to the maritime standard. 772 F.3d at 1254. Carnival also cites *Anderson v. Mascara* for the proposition that "[f]actual questions remain as to what the standard nursing practices were and whether they were followed." ECF No. 138 at 5. Here there is no question what the practices were: they are written, SMF ¶¶ 10–19, Carnival's staff testified to them, SMF ¶¶ 20–26, and the SMF Response identifies no evidence that they were followed.

Most important, Carnival has no expert who says the procedures were followed or that departing from them was consistent with the standard of care. Its *Daubert* response, filed the same day as the Response, states that "Dr. Parejo's review of any such Carnival policies is irrelevant to his opinions," and that he opines on whether the staff "met the appropriate medical standard of care, not if the shipboard medical staff followed Carnival's procedures nor if Carnival's procedures were appropriate." ECF No. 141 at 9–10. He testified that the deposition "was the first time I saw" MED-3104-A2. Parejo Dep. 148:5–9, ECF No. 116-10 at 149. The Response's claim that Plaintiff "inaccurately argues that Dr. Parejo 'did not review the rules that defined the care,'" ECF No. 138 at 6, is answered by his report, which lists three materials reviewed, the amended complaint, the chart, and a weather report, ECF No. 116-11 at 19, and by Carnival's own statement that his review of the procedures is "irrelevant."

## III. Dr. Parejo's generalized opinion does not create a genuine dispute about the five breaches.

The Response quotes one answer: that the care was "comprehensive," "very complete," "an excellent level of care," and that the doctors did "an amazing job in controlling the diabetes." ECF No. 138 at 5–6 (quoting Parejo Dep. 177:8–25, ECF No. 116-10 at 178). A party "may not avoid summary judgment solely on the basis of an expert's opinion that fails to provide specific facts from the record to support its conclusory allegations." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985). "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, . . . it cannot support a jury's verdict." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). The quoted answer does not mention a stroke scale, a focal-sign assessment, a coordination test, a time last known well, the triage category, the Senior Doctor, the disembarkation category, or the discharge. It cannot, because Carnival has disclaimed any opinion from him on the procedures, the chart, and the patient's mobility, ECF No. 141 at 7, 10, and an expert so disclaimed has nothing to say about whether a required assessment was omitted, a category was misassigned, or a patient who could not stand was sent to his cabin.

The Response answers that Plaintiff's criticisms "go to weight and credibility." ECF No. 138 at 2, 6–7. The cases it cites for that proposition concern admissibility, ECF No. 138 at 6 (citing *Brashevitzky* and *Carrizosa*), and the Motion does not ask the Court to weigh Dr. Parejo against Dr. Gomez. It asks whether Dr. Parejo's opinion addresses the facts at issue. Asked whether his opinion would survive a finding that the chart was wrong about Mr. Smith standing or walking, he answered that this "would mean that a lot of people have lied in this case," and: "I'm not going to change. I wouldn't change anything." Parejo Dep. 192:18–193:2, ECF No. 116-10 at 193–94. An

opinion that its author will not revisit whatever the facts are found to be is not evidence of what the facts are. The Response also objects that SMF ¶¶ 71–73 "mischaracterize deposition testimony," ECF No. 138 at 7, but the SMF Response quotes the testimony behind ¶ 71 in full and leaves ¶¶ 72–73 unaddressed. ECF No. 139.

## IV. Whether Mr. Smith walked to the bathroom at 19:24 on October 18 is not material, and the testimony Carnival cites does not help it.

The Response says there is record evidence "directly contradicting" Plaintiff on walking and quotes Dr. Maharaj's testimony that "he walked to the bathroom because he had to urinate." ECF No. 138 at 6–7 (citing ECF No. 116-2 at 129, 133). The transcript continues on the next lines. Asked "Was anyone holding him up?" Dr. Maharaj answered, "Okay. Yeah." Asked "You can't remember, you said?" he answered, "I can't remember, sir." Maharaj Dep. 133:1–4, ECF No. 116-2 at 134. Of the charted Romberg test, he answered: "I don't know if it was unsupported, but I would assume someone would be there holding him, or at least supporting him if he falls." *Id.* at 133:5–12. Of the identical "Steady gait" entry the next morning, he testified: "He didn't really walk for me, but if he walked, then I noted it as part of the exam." *Id.* at 169:8–15, ECF No. 116-2 at 170. The SMF Response disputes that paragraph, SMF ¶ 41, by quoting a different page of the transcript. ECF No. 139 ¶ 41. That evening the chart reads "Guest is however too lethargic to stand." SMF ¶ 44 (unaddressed).

More fundamentally, the walk to the bathroom is not material to any of the five breaches. Whether Mr. Smith walked a few steps at 19:24 does not change that no stroke scale, focal-sign assessment, coordination test, or time last known well was performed or documented over thirty-nine hours, SMF ¶¶ 33–36; that the four charted examinations are identical and contain no musculoskeletal section, SMF ¶¶ 37–39; that the triage category was never raised and the Senior

Doctor never documented as notified, SMF ¶¶ 48, 57–58; that "Cat 1" was selected in the same entry that recorded "Requires hospitalization most likely," SMF ¶¶ 54–55; or that Mr. Smith was released to his cabin in a wheelchair at 23:30 with no chart entry for ten hours, SMF ¶¶ 50–51. A dispute is material only "if it would affect the outcome of the suit under the governing law." ECF No. 138 at 2 (quoting *Anderson v. Mascara*, 347 F. Supp. 3d 1163, 1170 (S.D. Fla. 2018)). This one would not.

## V. At a minimum, the Rule 56(g) facts should be established.

Carnival's only argument against Rule 56(g) relief is that the Court has discretion to withhold it and that establishing facts would "awkwardly sever the presentation of evidence." ECF No. 138 at 8–9. The facts listed in the Motion, ECF No. 115 at 11–12, are chart entries, Rule 36 admissions, and the charting physician's own testimony. Carnival does not identify a single piece of record evidence contrary to any of them. Its only contrary assertion, that a last-known-well time "is documented," ECF No. 139 ¶ 33, carries no citation and is refuted by the chart and by Dr. Maharaj. Facts that the non-movant has not controverted on paper will not be "better illuminated" by trial; establishing them removes the need to prove at trial what Carnival has already declined to dispute, and confines the trial to the issues the Motion leaves open. ECF No. 115 at 3. Carnival's description of *Dorval*, ECF No. 138 at 8, is that Rule 56(g) relief "is warranted where the moving party has met its burden and non-movant fails to adduce competent evidence of specific facts alleged." That is this case.

## CONCLUSION

Plaintiff respectfully requests that the Court grant the Motion as to the five breaches identified in it, ECF No. 115 at 7–10, 12, or, alternatively, enter an order under Rule 56(g) treating the facts listed at ECF No. 115 at 11–12 as established.

Respectfully submitted,

/s/ Michael A. Hoffman
Michael A. Hoffman (Florida Bar No. 89549)
mahoffman@1800askfree.com
litigation@1800askfree.com
marinab@1800askfree.com
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, FL 33020
Telephone: (954) 920-1571
*Attorneys for Plaintiff Michael Smith*