**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24611-GAYLES/SHAW-WILDER**

MICHAEL SMITH,

Plaintiff,

v.

CARNIVAL CORPORATION,
NIKHIL MAHARAJ, M.D., and
LETLHOGILE RANTLERU, M.D.,

Defendants.
___________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF HIS DAUBERT MOTION TO EXCLUDE OR LIMIT THE OPINIONS OF CARNIVAL'S RETAINED EXPERT RUBEN D. PAREJO, M.D. [ECF NO. 117]**

Plaintiff, Michael Smith, replies in support of his *Daubert* Motion, ECF No. 117 (the "Motion"), and in response to Carnival's opposition, ECF No. 141 (the "Response"). Record citations are to the exhibits filed with the Motion: the Parejo Report (ECF No. 117-2, cited by ECF page), the Parejo Deposition (ECF No. 117-3, cited by transcript page and line; the ECF page is the transcript page plus one), the shipboard chart (ECF No. 117-4), and the Maharaj Deposition (ECF No. 117-6).

## INTRODUCTION

Carnival's Response narrows Dr. Parejo more than it defends him. It states that he "does not provide an opinion about the adequacy of Carnival's policies," that he is not offered to say whether "the shipboard medical staff followed Carnival's procedures," that he "is not proffered as an expert to explain the documented medical records," that he "is not further providing an opinion as to whether 'Mr. Smith could stand or walk,'" that the stroke treatment window "is not an

Opinion," and that he "will not be offering legal conclusions." ECF No. 141 at 3, 7, 9–10, 12. Each of those statements contradicts a conclusion in his report. Plaintiff asks the Court to hold Carnival to them and enter them as limits. What Carnival actually defends is the last-known-well opinion, the rough-seas premise, and the "differential diagnosis," and its defense of each is that the problem goes to weight. That answer rests on cases decided before Rule 702 was amended, effective December 1, 2023, to reject it: the Committee explained that "many courts have held that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility," and that "[t]hese rulings are an incorrect application of Rules 702 and 104(a)." Fed. R. Evid. 702 advisory committee's note to 2023 amendment. The Response does not mention the amendment. Nor does it respond at all to the Motion's first argument, that Dr. Parejo is not qualified to give stroke-timing and causation opinions.

## I. The Response does not defend Dr. Parejo's qualification to opine on stroke timing, the treatment window, or the consequences of the stroke.

The Response opens by asserting that "there are no arguments that Dr. Parejo is unqualified." ECF No. 141 at 1. There are. The Motion's first argument is captioned "He is not qualified to give them," and it shows that Dr. Parejo is not a neurologist, has never overseen a facility with a stroke unit, and could not name the stroke scale taught in the ACLS module his own report says every cruise-ship doctor must complete. ECF No. 117 at 7; Parejo Dep. 49:11–50:6, 161:16–20; ECF No. 117-2 at 14 (Concl. 15). The Response says nothing about any of it. "The burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc). A proponent that does not address qualification has not carried it.

Carnival instead recasts the window as something other than an opinion: Dr. Parejo, it says, "does not provide an opinion of what the stroke time window should be," but only applies a window "already-established by other specialists." ECF No. 141 at 3. His report says otherwise. Its methodology section lists, as item 4, a "[s]troke medicine framework using AHA/ASA guideline principles emphasizing need for brain imaging and time windows for reperfusion eligibility." ECF No. 117-2 at 23. Its first conclusion is that the delay "placed him outside any clinically meaningful therapeutic window for acute stroke intervention." *Id.* at 9. Its executive summary fixes the date on which "the window of opportunity to perform any interventions to treat and save cerebellar tissue was lost": October 16, 2024. *Id.* at 7. Those are his opinions, and the only "specialists" whose work he could have adopted are nowhere in his report. The "Materials Reviewed" section lists three items: the amended complaint, the shipboard chart, and the Pharos weather report. *Id.* at 19. No other expert's report appears, and he testified that June 3, 2026, the date of his report, was the last time he reviewed records for it. Parejo Dep. 9:6–13. An expert may rely on facts that experts in the field reasonably rely on, but he must actually have relied on them, and the report must disclose "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). The Response's other authority for the window is Dr. Gomez's testimony that thrombolytics must be given within 4.5 hours of last known well. ECF No. 141 at 3 (citing ECF No. 110-10, Tr. 64:22–65:7). That is the rule; it says nothing about when Mr. Smith's window opened. Asked the next question, whether Mr. Smith was outside the window when he presented, Dr. Gomez answered, "I would not agree on that." ECF No. 110-10, Tr. 65:8–14. That is the dispute, and Dr. Parejo is not qualified to resolve it.

## II. The last-known-well opinion applies one premise two ways, and the Response confirms it.

The Response quotes the testimony in full and calls it "not contradictory." ECF No. 141 at 4. The full quotation proves the Motion's point. Dr. Parejo testified that no one "can determine when it happened," and then placed the last time Mr. Smith was well on October 16 because "[t]hat's when he began to have symptoms. . . . He begins to have diarrhea." Parejo Dep. 93:11–23. Carnival's own neurologist defines last known well as "when the person first develops a neurological deficit," such as "a speech dysfunction" or "weakness of their hand." Barredo Dep. 96:15–22, ECF No. 119-5 at 97. Dr. Parejo's report, however, states that Mr. Smith "never had any symptoms indicative of a stroke." ECF No. 117-2 at 5. The Response says "both can happen, and did happen," ECF No. 141 at 4, but it never explains how diarrhea on October 16 can be the onset of a stroke when the question is causation and not a stroke symptom when the question is the standard of care. It cannot be both. Either the October 16 symptoms marked the stroke, in which case Mr. Smith arrived at the medical center with two days of stroke symptoms and the opinion that a stroke was "impossible to suspect," ECF No. 117-2 at 5, fails; or they did not, in which case the October 16 date has no basis. That is not a conflict between two statements at different times, which is how the Response characterizes the *Cap. Jazz* decision it relies on, ECF No. 141 at 4; it is a single premise used two ways in the same report. Whether an opinion "reflects a reliable application of the principles and methods to the facts of the case" is an admissibility question. Fed. R. Evid. 702(d).

The Response also concedes that the hemoglobin-and-hematocrit basis Dr. Parejo offered at deposition for the October 16 date, Parejo Dep. 85:2–24, appears nowhere in his report, and explains that his report "could not have possibly imagined all of the irrelevant questions posed by

Plaintiff's counsel." ECF No. 141 at 5. The question was when the stroke began. Rule 26 does not ask what questions an expert imagined; it requires "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i).

On the "temporary event" opinion, the Response says that Dr. Parejo's statement and Dr. Barredo's finding of right-arm cerebellar dysfunction "are not connected nor purport to be." ECF No. 141 at 5. That is the problem. The statement that the stroke "was temporary and there are no catastrophic consequences for him," ECF No. 117-2 at 5, cites nothing. Asked for its basis, Dr. Parejo answered, "reading all those pages that were provided to me from the medical care at shoreside," Parejo Dep. 101:6–11; attributed Mr. Smith's inability to walk to his knees, *id.* at 101:23–102:4; and then agreed that Mr. Smith's consequences "are not reversible," *id.* at 105:10–23. "[C]onclusory statements devoid of factual or analytical support" are "simply not enough." *Cook ex rel. Est. of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1113 (11th Cir. 2005).

## III. The motion-sickness and "impossible to suspect" opinions rest on a premise the record does not support, and the Response gives up the foundation for them.

**Defendant focuses on rough seas that had not yet begun.** The Response quotes the testimony it says supports the rough-seas premise. ECF No. 141 at 6. The quoted answer is conditional: "if the baseline motion sensitivity . . . was such that he fell motion sickness on the 16th, then the rough seas only made it worse." Parejo Dep. 99:16–21. The report did not rest on an "if." It rested on the Pharos report's "prolonged period of rough seas/weather." ECF No. 117-2 at 5. Carnival's own maritime expert places the onset of that weather after the ship left Freeport on the afternoon of October 18, with "gale/rough conditions beginning approximately 1500." ECF No. 118-2 at 15, 24. Mr. Smith had been vomiting for two days by then. ECF No. 117-4 at GR000005.

The Response now substitutes a different basis, Dr. Parejo's "extensive experience" that *some passengers feel motion sickness before the ship sails*. ECF No. 141 at 7. Experience "standing alone" is not "a sufficient foundation rendering reliable any conceivable opinion the expert may express," and the witness "must explain how that experience leads to the conclusion reached." *Frazier*, 387 F.3d at 1261 (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment). He did not; and he conceded that diarrhea "is not a symptom of motion sickness." Parejo Dep. 120:9–13.

**Standing and walking the ship doctor could not confirm.** The Response states that Dr. Parejo "is not proffered as an expert to explain the documented medical records" and "is not further providing an opinion as to whether 'Mr. Smith could stand or walk.'" ECF No. 141 at 7. Plaintiff accepts that limit. But the opinion that there was "absolutely no reason" to suspect a stroke rests, by Dr. Parejo's own testimony, "on the neurological exams recorded in the Sea Care chart," Parejo Dep. 12:2–8, and his report characterizes those entries as "comprehensive neurological examinations" showing "normal neurological exams," ECF No. 117-2 at 7. An expert who offers no opinion on whether the patient could stand or walk cannot tell the jury that the "[s]teady gait" and "negative Romberg" entries, ECF No. 117-4 at GR000020–22, show a normal neurological examination. The Response calls the Motion's closing hypothetical "illogical." ECF No. 141 at 7–8. The hypothetical was Plaintiff's version of the facts: that Mr. Smith never stood or walked in the medical center, as he testified, and as the charting physician in part confirmed when he said that Mr. Smith "didn't really walk for me." ECF No. 117-6, Maharaj Dep. 169:8–15. An expert asked to apply his method to the opposing party's facts, who answers that he is "not sure how to answer that," Parejo Dep. 191:3–5, and who testified that even if the records were wrong about

walking, "I'm not going to change. I wouldn't change anything," *id.* at 192:25–193:2, is not applying a method to the facts. Fed. R. Evid. 702(d).

**The "differential diagnosis" that was never performed.** The Response quotes the sentence in which the report announces a "differential diagnosis analysis." ECF No. 141 at 8. "[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient." *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1253 (11th Cir. 2005). The Response says Dr. Parejo "considered" other diagnoses. ECF No. 141 at 9. His testimony is that a differential "cannot come out of the blue. If I don't *see* it, if I don't *see* a sign, therefore the subsequent differential diagnosis doesn't exist." Parejo Dep. 65:21–66:1. His report says the ship's motion made it "impossible to differentiate" motion sickness from a cerebellar stroke. ECF No. 117-2 at 5. And he conceded that communicable disease was never ruled out. Parejo Dep. 154:23–155:4. The Response describes *Martin-Viana* as upholding a differential diagnosis where the expert "properly considered different diagnoses." ECF No. 141 at 9. That is what Dr. Parejo did not do.

## IV. Carnival's concessions dispose of the procedure, ACEP, and CLIA opinions.

The Response states that Dr. Parejo "does not provide an opinion about the adequacy of Carnival's policies," that his review of Carnival policies "is irrelevant to his opinions," and that he is not offered on whether "the shipboard medical staff followed Carnival's procedures nor if Carnival's procedures were appropriate." ECF No. 141 at 9–10. The report says the opposite.

- Conclusion 14: "Cruise ships do have protocols in place and Carnival Corporation has a comprehensive support system for these events. There was no clinical indication to activate these protocols." ECF No. 117-2 at 13.

- Conclusion 10: the medical team "had no reason to activate medical evacuation protocols at sea." *Id.* at 12.
- Conclusion 11: because Carnival is a CLIA member, "they follow, meet or exceed" the ACEP guidelines "in all aspects of their medical operation," and "the medical facility and the medical team onboard Carnival Pride meet and exceeds ACEP and CLIA standards." *Id.* at 12–13. At deposition he testified that the shipboard team did "what they say, that they meet and they exceeded the standards of the American College of Emergency Physicians." Parejo Dep. 177:22–25.

If, as Carnival now says, he offers no opinion on whether the staff followed Carnival's procedures or whether those procedures were adequate, Conclusions 10, 11, and 14 and the testimony that the care met ACEP and CLIA standards should be excluded on Carnival's own representation. The Response's argument that maritime law does not recognize a claim for negligent policies, ECF No. 141 at 9–10, is not a *Daubert* argument, and Carnival answered the operative complaint on November 2, 2026. ECF No. 150. Its footnote that "CDC compliance" is not at issue, ECF No. 141 at 10 n.1, overlooks that Dr. Parejo's report is what invokes the CDC, against the patient. ECF No. 117-2 at 3–4, 11 (Concls. 7–8).

The Response calls the Motion's point about the chart "curious" because Plaintiff also relies on the chart. ECF No. 141 at 10. Plaintiff relies on the entries Dr. Parejo ignores: that Mr. Smith arrived "unable to walk," returned the next morning "in a wheelchair," and that evening was "too lethargic to stand." ECF No. 117-4 at GR000005, GR000039, GR000042; Parejo Dep. 17:16–18:1, 22:6–12, 28:13–16. The Motion's point is that an expert who accepts the "[s]teady gait" entries as written, while the surrounding entries describe a man who could not stand, and who testified that he would not revisit his opinion if those entries were wrong, has not based his opinion

on "sufficient facts or data" or reliably applied his method to them. Fed. R. Evid. 702(b), (d). The authorities the Response cites for the proposition that factual weaknesses go only to weight, *Johnson* (2021), *Quiet Technology* (2003), and *Cap. Jazz* (September 2023), ECF No. 141 at 11, all predate the amendment that rejected that proposition.

**V. The legal conclusions and fault attributions should be excluded.**

The Response states that Dr. Parejo "will not be offering legal conclusions." ECF No. 141 at 12. The report's final page concludes that "there is no evidence of negligence, deviation from accepted standards of care, or causal conduct attributable to the shipboard medical team," and that "no causal nexus exists between the actions or omissions of the shipboard providers and the patient's ultimate outcome." ECF No. 117-2 at 24. Those passages should be excluded by agreement. An expert "may not, however, merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

On fault, the Response says the report nowhere calls Mr. Smith negligent. ECF No. 141 at 11. It calls his decision "a serious mistake from multiple angles," ECF No. 117-2 at 5, and concludes that nothing done aboard mattered "because Michael Smith decided to call for help too late," *id.* at 14 (Concl. 17). Carnival's analogy to *Chappell*, in which a toxicologist testified to an estimated blood-alcohol level and its physiological effects, ECF No. 141 at 11, does not fit. Physiology is science. Whether a passenger with two days of vomiting and diarrhea should have gone to the medical center sooner is a judgment about reasonableness, and Dr. Parejo conceded the limit of it: "[h]e wasn't supposed to know that he was having a stroke, but he was supposed to know that he was having diarrhea." Parejo Dep. 180:4–6. Dr. Parejo may describe what the chart records about when symptoms began. He may not tell the jury the delay was a "serious mistake." Fed. R. Evid. 702(a), 403.

## VI. The cumulative objection is preserved.

Carnival argues that the cumulative objection is premature. ECF No. 141 at 6. Plaintiff does not object to deferring it to trial, provided that Dr. Parejo, who is not a neurologist, is not permitted to testify on reperfusion eligibility if Drs. Merkler and Barredo do.

## CONCLUSION

Plaintiff respectfully requests that the Court grant the Motion and enter an order excluding

(1) Dr. Parejo's opinions on the timing of the stroke, the treatment window, the consequences of the stroke, and whether any act or omission aboard would have changed the outcome, including Conclusions 1, 5, and 17;

(2) the motion-sickness, rough-seas, and "impossible to suspect" opinions, including Conclusion 9;

(3) Conclusions 6, 10, 11, and 14 and any testimony that Carnival or its staff complied with Carnival's procedures, ACEP guidelines, or CLIA standards, as Carnival's Response concedes he is not offered to give;

(4) the legal conclusions at ECF No. 117-2 at 24, as Carnival's Response concedes; and

(5) any opinion that Mr. Smith's delay was a "mistake" or otherwise attributing fault to him.

## REQUEST FOR HEARING

Plaintiff requests a hearing on this Motion, to be held together with the parties' other expert motions, ECF Nos. 111, 112, 114, 118, and 119, as Plaintiff requested in ECF No. 148. A hearing would assist the Court because, as Plaintiff explained in ECF No. 148, those motions address the same timeline, and the ruling on each bears on the scope of the others. Plaintiff estimates thirty minutes for argument.

Respectfully submitted,

/s/ Michael A. Hoffman
Michael A. Hoffman (Florida Bar No. 89549)
mahoffman@1800askfree.com
litigation@1800askfree.com
marinab@1800askfree.com
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, FL 33020
Telephone: (954) 920-1571
*Attorneys for Plaintiff Michael Smith*