**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:25-cv-24611-GAYLES/SHAW-WILDER**

MICHAEL SMITH,

Plaintiff,

v.

CARNIVAL CORPORATION,
NIKHIL MAHARAJ, M.D., and
LETLHOGILE RANTLERU, M.D.,

Defendants.
___________________________________/

**PLAINTIFF'S REPLY IN SUPPORT OF HIS DAUBERT MOTION TO LIMIT THE OPINIONS OF CARNIVAL'S RETAINED EXPERT CAPT. RICHARD M. MILLER [ECF NO. 118]**

Plaintiff, Michael Smith, replies in support of his *Daubert* Motion, ECF No. 118 (the "Motion"), and in response to Carnival's opposition, ECF No. 142 (the "Response"). Record citations are to the exhibits filed with the Motion: the Miller Report (ECF No. 118-2) and Rebuttal Report (ECF No. 118-3), cited by ECF page; the Miller Deposition (ECF No. 118-4), cited by transcript page and line (the ECF page is the transcript page plus two); and Carnival's responses to Plaintiff's second requests for admission (ECF No. 118-5).

**INTRODUCTION**

The Response concedes most of what the Motion asks. It states that "[t]here is no dispute that Captain Miller is not offering any medical opinions at trial"; that he "will not offer testimony as to the medical necessity of ordering a medical evacuation from the vessel"; and that he "does not offer any opinion that vessel motion or sea conditions caused, aggravated, or otherwise contributed to Plaintiff's medical symptoms or medical condition." ECF No. 142 at 2–4. Those

concessions should be entered as the Court's order, because Capt. Miller's reports say otherwise, and a concession in a brief does not keep an opinion out of a report that Carnival will hand the jury. What remains is Rebuttal Opinion 6, the helicopter and small-boat opinion. On that, the Response concedes that Capt. Watson offered no helicopter or small-boat hypothetical, so there is nothing for a "rebuttal" to rebut, and it does not deny that the opinion rests on the premise that Mr. Smith was "declining medical treatment," a premise Capt. Miller adopted without reading the testimony that disputes it.

The Response's answer to everything else is "weight," supported by cases decided before Rule 702 was amended, effective December 1, 2023, to make clear that "the sufficiency of an expert's basis" and "the application of the expert's methodology" are admissibility questions. Fed. R. Evid. 702 advisory committee's note to 2023 amendment.

**I. The Court should enter Carnival's concessions as limits, because the reports exceed them.**

Medical evacuation. The Response states that Capt. Miller will not testify "as to the medical necessity of ordering a medical evacuation," and that his opinions concern only "feasibility of a medical evacuation if ordered." ECF No. 142 at 3. Plaintiff has never disputed that a master mariner may explain how an evacuation would be carried out once ordered. ECF No. 118 at 6–7. The reports go further. Rebuttal Opinion 1 declares Capt. Watson's 19:45 decision point "invalid" because of "no medical determination to recommend SMITH's need for a MEDEVAC in the first 30 minutes of his Medical Center visit," and then states that "[w]hile the maritime aspects of ship maneuvering may have been feasible, the overall circumstances were not aligned to make that hypothetical decision . . . 'operationally feasible for consideration'" at 19:45. ECF No. 118-3 at 22.

The rebuttal also announces a general rule: "[a]bsent an obvious critical medical event or traumatic injury, that upon immediate observation definitively necessitates a MEDEVAC (if logistically feasible), completion of the initial physician examination does not trigger the initiation of a MEDEVAC process." *Id.* at 11. And it opines that in a small-boat transfer, "[m]edically, the patient would be exposed to repeated shock loads." *Id.* at 20. Whether a medical determination should have been made, what kind of presentation "necessitates" an evacuation, and what a transfer would do to a patient medically are the medical opinions Carnival now disclaims. The order should say so: Capt. Miller may testify to ship position, distances, sea state, maneuvering, and the mechanics of a transfer once requested; he may not testify that no evacuation was indicated, that an initial examination does not "trigger" one, or to the medical effects of a transfer.

Motion sickness. The Response states that Capt. Miller "does not offer any opinion that vessel motion or sea conditions caused, aggravated, or otherwise contributed to Plaintiff's medical symptoms or medical condition." ECF No. 142 at 4. Rebuttal Opinion 7 states that Capt. Watson's errors "may have undermined or precluded his consideration for how much ship motion may have contributed to nausea and related ship-motion-induced symptoms." ECF No. 118-3 at 23. The Response says that phrase is "attributed to the opinions of Plaintiff's expert, Capt. Watson." ECF No. 142 at 4. It is not. The sentence faults Capt. Watson for failing to consider something; the premise that ship motion "contributed to nausea" is Capt. Miller's own, and the Response identifies nothing in Capt. Watson's report that says it. Opinion 6 of the May report likewise identifies "[t]he ship motion most likely to induce motion sickness aboard PRIDE." ECF No. 118-2 at 25. Plaintiff does not seek to exclude Capt. Miller's description of the ship's motion or the seakeeping literature on which it rests, which is all the Response defends. ECF No. 142 at 4–5. What Plaintiff seeks, and what Carnival says it does not intend, is any testimony linking that motion to Mr. Smith's

symptoms. The link would not fit the facts in any event. Capt. Miller places the rough weather after the ship left Freeport on the afternoon of October 18, with gale conditions "beginning approximately 1500," ECF No. 118-2 at 15, 24, and the chart records that Mr. Smith had been vomiting for two days when he presented at 19:16, ECF No. 118-6 at GR000005. Asked about vomiting that began before the ship left Freeport, Capt. Miller answered: "I don't know what the source of his nausea or -- or vomiting was prior to departing Freeport." Miller Dep. 107:24–108:1. Testimony that ship motion induced symptoms that began two days before the motion does not "help the trier of fact." Fed. R. Evid. 702(a). The order should limit Capt. Miller to describing the ship's motion and exclude Rebuttal Opinion 7 and Opinion 6 of the May report to the extent either is offered to explain Mr. Smith's symptoms.

**II. Rebuttal Opinion 6 should be excluded.**

There is nothing to rebut. The Response states that at deposition "Capt. Watson later conceded that he did not actually provide any hypothetical scenario involving a transfer by helicopter," and that if Capt. Watson's helicopter opinions are stricken, "issues with Capt. Miller's rebuttal opinions on this topic may become moot." ECF No. 142 at 6. Capt. Watson agreed that he has "not provided any hypothetical scenario that would involve Mr. Smith being transferred by helicopter," and that "[t]he only hypothetical scenario" he has offered "is a ship diversion to shore." ECF No. 110-12, Watson Dep. 70:24–71:9. Plaintiff said the same in opposing Carnival's motion to exclude Capt. Watson: he identifies surface transfer and helicopter evacuation as pathways that "could have been requested and evaluated," and does not opine that either would have occurred. ECF No. 146 at 6. A rebuttal disclosure is one "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Fed. R. Civ. P. 26(a)(2)(D)(ii). Rebuttal Opinion 6, that "neither a hypothetical small boat nor helicopter transfer

would have been likely," ECF No. 118-3 at 23, rebuts a scenario Capt. Watson did not offer. Carnival may present, through its maritime expert, the sea, wind, and night conditions Capt. Miller describes in his reports; Plaintiff said so in ECF No. 146 at 6. It may not present, as "rebuttal," a verdict on a transfer no one proposed.

The opinion rests on a disputed medical-legal premise its author never examined. Asked what calculations supported the helicopter opinion, Capt. Miller answered that "the biggest factor in this case was -- was the winds and sea state, and the fact that the Coast Guard is generally not going to medevac a patient who is declining medical treatment." Miller Dep. 58:4–7. The Response does not address that premise except to argue that an expert may rely on "a particular version of 'disputed' facts." ECF No. 142 at 8. The cases the Response cites for that proposition, as it describes them, involve experts who chose between competing accounts. Capt. Miller did not choose. He did not know there was a dispute. He did not review the deposition testimony of Mr. Smith or Mr. Grimm "where they denied ever signing those documents," or the testimony "that they were actually fighting to stay in the infirmary to get care." *Id.* at 58:21–59:7. He agreed that whether a passenger "lacks capacity" is "a medical determination." *Id.* at 58:17–20. And Carnival has admitted that both forms list "Hyperglycaemia, unspecified" as the diagnosis, that neither lists a stroke or any neurological condition, that the "Referral to Baltimore hospital" version was time-stamped one minute before the "Admission to medical center for monitoring" version, and that all four signatures on each form bear the same time stamp. ECF No. 118-5, Resp. to Req. Nos. 6–12. An opinion that assumes the answer to a disputed fact, by a witness who did not consider the evidence on either side, is not "based on sufficient facts or data." Fed. R. Evid. 702(b). That is not a weight question under the amended rule. Fed. R. Evid. 702 advisory committee's note to 2023

amendment. At a minimum, Capt. Miller may not tell the jury that the Coast Guard would not have evacuated Mr. Smith because he was "declining medical treatment."

The analysis he built was deleted. The Response treats the deleted helicopter-assets overlay as a test Capt. Miller "failed to conduct," citing *Demarzo*. ECF No. 142 at 7. He conducted it. He built a helicopter-assets overlay and a key-medical-events overlay, invoiced a call with Carnival's counsel "to review overlays," and then deleted both. Miller Dep. 7:13–8:7, 20:15–18, 19:19–25. The Response calls the Motion's quotations "snippets . . . wholly out of context," ECF No. 142 at 7, but identifies no context that changes them. A retained expert's report must disclose "the facts or data considered by the witness in forming" his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii). The overlay was built for this case, on this question. Whether Capt. Miller ultimately "used" it, Plaintiff cannot test it, and the only analysis now offered for the helicopter opinion is the witness's word. "A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). The Response's cases about experts who did not review every document, ECF No. 142 at 7, concern what an expert left unread, not what he built and discarded.

Small boat. The Response says the Motion "fails to provide any argument or support" on the small-boat transfer. ECF No. 142 at 6. The Motion's three grounds, ECF No. 118 at 8–9, are directed to Rebuttal Opinion 6 as a whole, and two of them apply to the small-boat half: it rebuts a scenario Capt. Watson did not offer, and it rests in part on the medical statement that the patient "would be exposed to repeated shock loads," ECF No. 118-3 at 20, which Carnival now disclaims. The testimony the Response cites for the small-boat risks, Miller Dep. 83:1–84:8, includes Capt. Miller's acknowledgment that Carnival's masters "could potentially mitigate" them. *Id.* at 83:21–22.

Capt. Miller's concessions stand. The Response says the Motion took "snippets" about the helicopter range ring and the ship's ability to "physically divert" out of context, but does not say what the context is. ECF No. 142 at 7–8. Capt. Miller testified that the ship was within a Coast Guard helicopter range ring at "around 1400" on October 18, Miller Dep. 16:17–22, and the point of the Motion is not that these admissions contradict his opinion but that they are what remains of it once the medical premise and the deleted analysis are removed.

## CONCLUSION

Plaintiff respectfully requests that the Court grant the Motion and enter an order that (1) limits Capt. Miller to testimony about weather, sea state, ship motion, ship position, distances, and the mechanics of ship maneuvering and transfer; (2) excludes, consistent with Carnival's representations, any opinion on whether Mr. Smith's condition warranted medical evacuation, diversion, or hospital transfer, including Rebuttal Opinion 1 and ECF No. 118-3 at 11 and 20 to that extent; (3) excludes any opinion that ship motion caused, contributed to, or explains Mr. Smith's symptoms, including Rebuttal Opinion 7 and Opinion 6 of the May report to that extent; and (4) excludes Rebuttal Opinion 6, and in any event any testimony that an evacuation would not have occurred because Mr. Smith was declining medical treatment.

## REQUEST FOR HEARING

Plaintiff requests a hearing on this Motion, to be held together with the parties' other expert motions, ECF Nos. 111, 112, 114, 117, and 119, as Plaintiff requested in ECF No. 148. A hearing would assist the Court because, as Plaintiff explained in ECF No. 148, those motions address the same timeline, and the ruling on each bears on the scope of the others. Plaintiff estimates thirty minutes for argument.

Respectfully submitted,

/s/ Michael A. Hoffman
Michael A. Hoffman (Florida Bar No. 89549)
mahoffman@1800askfree.com
litigation@1800askfree.com
marinab@1800askfree.com
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, FL 33020
Telephone: (954) 920-1571
*Attorneys for Plaintiff Michael Smith*