UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:25-cv-24611-DPG

MICHAEL SMITH,

Plaintiff,

v.

CARNIVAL CORPORATION,
NIKHIL MAHARAJ, M.D., and
LETLHOGILE RANTLERU, M.D.

Defendants.
______________________________/

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S DAUBERT MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF JERRY ADATO [ECF NO. 113]**

Defendant, CARNIVAL CORPORATION, by and through undersigned counsel, hereby files this Reply to Plaintiff's Response in Opposition [ECF No. 145] to Defendant's Motion *in Limine* to Exclude Opinions and Testimony of Jerry Adato at Trial Pursuant to *Daubert v. Merrill Dow Pharm, Inc.* [ECF No. 113], and states as follows:

**A. Qualifications**

Plaintiff concedes that Mr. Adato is not qualified to offer medical opinions, but glosses over the fact that a medical foundation is required to render the opinions underlying his life care plan including what future medical treatment and equipment will be needed by the Plaintiff, whether his limitations are due to the subject injuries or other medical conditions, and what is Plaintiff's current life expectancy. Mr. Adato clearly recognized this shortcoming, which is why he attempted to contact treating physician Dr. Sestric five (5) times and why Plaintiff ultimately retained the undisclosed neurology expert, Dr. Shaya, shortly before the expert disclosure deadline to review

and collaborate on Mr. Adato's life care plan. Mr. Adato testified that Dr. Shaya was brought onto the case because he would not release his report without a doctor "reviewing it, and making suggestions, correcting me, suggesting that I got something wrong…" Tr. at 43:24-45:6.

## B. Medical Foundation

### 1. Diagnosis

Mr. Adato testified that he relied upon diagnoses made by treating provider, Dr. Sestric, to formular his life care plan. Tr. at 31:21-32:6. Mr. Adato also testified that he relied upon Dr. Sestric for the determination that Plaintiff's injuries are permanent. Tr. at 66:20-67:8. However, at his deposition on September 25, 2026, the most recent record he had from Dr. Sestric was dated February 12, 2025 nearly 18 months prior. Tr. at 38:9-13. Mr. Adato never spoke with Dr. Sestric about Plaintiff's diagnoses or future prognosis despite conceding that he would be the best source of this information. Tr. at 40:14-42:8.

### 2. Dr. Shaya

Plaintiff suggests that because Dr. Shaya was referenced in Mr. Adato's life care plan she was disclosed. However, Plaintiff fails to address why Dr. Shaya, a retained neurology expert upon who's medical opinions the life care plan rests, was not disclosed in Plaintiff's Expert Witness Disclosures.

It is clear that Mr. Adato relied upon Dr. Shaya for more than just a brief sign-off of his life care plan—he sent her Plaintiff's medical records, spoke with her on the phone over the course of two days and revised his report based upon her recommendations, although he did not delineate what opinions and recommendations came from her as opposed to Plaintiff's medical records. Tr. at 45:11-17; 49:23-52:12.

Rule 703 does not permit an expert to "simply repeat or adopt the findings of another expert without attempting to assess the validity of the opinions relied upon." *La Gorce Palace Condominium Association, Inc. v. Blackboard Specialty Insurance Company*, 586 F.Supp.3d 1300 (S.D. Fla. 2022). In that case, the Court excluded an expert who relied upon the opinions of an undisclosed expert and subsequently excluded the opinions of the second expert when plaintiff moved to disclose him. Here, Mr. Adato is being used as a mouthpiece for Dr. Shaya's out of court statements.

**3. Carnival's Neurologist**

Plaintiff contends that Carnival's examining neurologist, Dr. Barredo, "confirms the deficits the Plan is built around." Dr. Barredo's observation that Mr. Smith has "some degree of cerebellar dysfunction" and "an abnormal gait and imbalance" establishes only that some deficit exists. It does not establish that the deficit is permanent, that it requires six hours of daily attendant care over 23.5 years, or that the lifetime schedule of therapy, imaging, and equipment in the Plan is attributable to the stroke rather than Mr. Smith's comorbidities. Mr. Adato conceded he did not even review Dr. Barredo's findings until after he wrote the life care plan, and that those findings "could impact" his opinions. A plan its own author admits he prepared without the examination he now invokes to defend it is not corroborated by that examination.

**C. Life Expectancy**

Mr. Adato could not outline a coherent methodology that he utilized to determine a life expectancy for Plaintiff to underpin his life care plan. He conceded that none of Mr. Smith's treating doctors gave an opinion on life expectancy. Additionally, he acknowledged that

Plaintiff's uncontrolled diabetes would be a significant factor in shortening his life expectancy and he did not account for this in his determination of Plaintiff's life expectancy or the reduction in life expectancy caused by the stroke at issue in this case.

Courts in this District have excluded life care plans where the life care planner did not use a reliable methodology to determine life expectancy including failure to account for the plaintiff's comorbidities. *See Rinker v. Carnival Corp.*, 2012 WL 37381 (S.D. Fla. 2012) (excluding a life care plan where the expert acknowledged he did not account for plaintiff's stage 3 cancer when evaluating life expectancy but that it would impact life expectancy finding that this rendered the opinions as to future medical needs unreliable); *see also Noon v. Carnival Corporation*, 2019 WL 5784689 (S.D. Fla. 2019).

Additionally, contrary to Plaintiff's assertion, Mr. Adato's unexplained decision to reduce Plaintiff's life expectancy by only five (5) years rather than the 7.4 years he claims his source suggests is not beneficial to the Defendant, as this means that Plaintiff's life expectancy was increased by Mr. Adato by 2.4 years.

**D. Apportionment Between Stroke and Other Conditions**

A conclusory limitation the expert cannot defend is not reliability. Mr. Adato conceded he is unable to say which of Mr. Smith's deficits and needs stem from the stroke as opposed to his pre-existing conditions, because apportionment is outside his expertise. The record does not merely leave the apportionment unproven; it contradicts the Plan. Mr. Adato acknowledged that Mr. Smith received his wheelchair for an orthopedic problem, that Mr. Smith has bilateral osteoarthritis and needs both knees replaced, and that he could cite no record tying the mobility devices to the stroke rather than the knees. He attributed a wheelchair-accessible van to stroke-related deficits without

accounting for the fact that Mr. Smith never held a driver's license and relied on family for transportation before the injury.

**E. Attendant Care**

Mr. Adato acknowledges that the attendant care opinion is not his own. He concedes that he originally determined that Plaintiff would require 10 hours of attendant care per day, but he reduced this to six hours based upon the recommendation of Dr. Shaya. Tr. at 50:3-15. He does not provide any reliable methodology for his own determination and we have been provided with no basis for how Dr. Shaya arrived at her own conclusion. This is not a question of weight as this is an opinion that has been provided without any indication of reliability, premised on the recommendation of the undisclosed physician.

**F. Helpfulness**

Even a qualifying opinion may still be excluded by applying Rule 403 where its probative value is "substantially outweighed by its potential to confuse or mislead the jury," because expert testimony "may be assigned talismanic significance in the eyes of lay jurors." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004). Permitting Mr. Adato to recite Dr. Shaya's undisclosed medical determinations would invite the jury to accept those determinations clothed in the authority of expert testimony, without the scrutiny that attends an actual, examinable medical witness. And given the other concerns with Mr. Adato's methodology, his life care plan could easily serve to confuse the jury, and might well have mislead it so that the trier of fact would not be assisted by it. *Id.*

**G. Limitation is Not an Adequate Remedy**

Plaintiff asks, in the alternative, that the Court "limit" any insufficiently supported component rather than exclude the life care plan. However, this would be a wholly inadequate and prejudicial solution, as the defects are not confined to any severable line item—they run through the life care plan's core. Every medical premise: permanency, stroke-attribution, life expectancy, and the quantum of care—traces to clinical opinions Mr. Adato concedes are not his, supplied by an undisclosed physician whose methodology he cannot explain and whose work cannot be tested. Strip that inappropriate foundation away and no independently reliable opinion remains. Nor is cross-examination an adequate substitute. Where an opinion is "not reliable nor sufficiently supported," cross-examination "would not provide adequate relief," because such opinions "are significantly problematic and the jury should not be exposed to them in the first place." *Leger v. Carnival Corp.*, No. 1:24-CV-21364, 2025 WL 1295042 (S.D. Fla. Feb. 25, 2025). Courts "do not hesitate to exclude purported expert testimony which does not pass muster." *Id.*

WHEREFORE, Defendant, CARNIVAL CORPORATION, respectfully requests that this Court grant its Motion *in Limine* to Exclude Opinions and Testimony of Jerry Adato [ECF No. 113], and for any further relief this Court deems just and proper.

Respectfully submitted,

GrayRobinson, P.A.
515 North Flagler Drive, Ste. 650
West Palm Beach, Florida 33401
Tel: (561) 268-5727
Fax: (561) 268-5747

By: */s/ Charles J. Roussin*
Michael J. Drahos
Florida Bar No. 0617059
*michael.drahos@gray-robinson.com*
W. Cooper Jarnagin
Florida Bar No. 117767
*cooper.jarnagin@gray-robinson.com*

Ashley Genoese
Florida Bar No. 1019357
*ashley.genoese@gray-robinson.com*
Charles J. Roussin
Florida Bar No. 1010409
*charles.roussin@gray-robinson.com*

*Attorneys for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to received electronically Notices of Electronic Filing.

*/s/ Charles J. Roussin*

**SERVICE LIST**
**CASE NO. 1:25-cv-24611-DPG**

David W. Singer, Esq.
Michael A. Hoffman, Esq.
David W. Singer & Associates, P.A.
1011 South Federal Highway
Hollywood, Florida 33020
Tel: (954) 920-1571
mahoffman@1800askfree.com
adecasanova@1800askfree.com

*Attorneys for Plaintiff*